## COMMONWEALTH *vs.* HOLDER M. BROWNELL.

Dukes County.   Oct. 26. — Nov. 23, 1887.   C. ALLEN & KNOWLTON, JJ.,
absent.

At the trial of a criminal case, the defendant's counsel, in his closing argument to the jury, used this language: "If you acquit the defendant of this charge, how will you answer the question of your neighbors and friends as to why you did it? You will answer it as your own consciences must feel here. It was not proven. The government failed to convict him." The counsel was interrupted by the judge, who refused to allow him to pursue that line of argument, on the ground that it was improper. *Held,* that the defendant had good ground of exception.

At the trial of a complaint for keeping and maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors, evidence of a conversation between a witness for the government, who has testified that he was active in the prosecution, and the complainant, who is not a witness, in relation to the matter, is properly excluded.

At the trial of a complaint for keeping and maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors, it appeared that the tenement was a hotel, with a bar-room in the basement; that the bar-room could be entered by passing through the office of the hotel and going down stairs, and also by entering a door in the basement. Two officers, who testified that they made a seizure of liquors in the bar-room, stated that, when they passed through the office, they saw the defendant there. The sheriff of the county testified that he had seen the defendant about the office, looking at the books, writing, and giving directions. Another witness testified that he had seen the defendant about the office, giving directions, and had seen him direct a servant to take a card to a guest's room. The defendant did not testify as a witness. The judge, after instructing the jury as to the defendant's right not to testify, instructed them as follows: "If you find, upon the question of the proprietorship of that hotel, he had it in his power to produce witnesses here not known to the government, who could give you further light upon that question, and he does not choose to do it, you may take that fact into consideration when you come to consider whether there is any reasonable theory consistent with his non-proprietorship of that hotel and with the evidence. I do not mean to say that his failure to produce the witnesses here will fill up any gap, if you find any, in the evidence of the Commonwealth, but only that when you are to consider the reasonableness of any explanation of his acts here, if any have been proved, with regard to that hotel, consistent with his not being the proprietor of it, you may take into consideration the fact whether or not there is other evidence in his power upon that question which he could place before you." *Held,* that the defendant had no ground of exception.

COMPLAINT for keeping and maintaining a common nuisance, to wit, a certain tenement in Cottage City, used for the illegal sale and illegal keeping of intoxicating liquors, on July 8, 1887,

and on divers other days and times between that day and August 9, 1887. Trial in the Superior Court, before *Hammond*, J., who allowed a bill of exceptions, in substance as follows:

It appeared that the Sea View House, the tenement alleged in the complaint, was a public hotel in Cottage City. The usual passageway for guests led from the sidewalk in front of the building on to a piazza, and from there into a room where the office was, with reception-rooms on each side, and with an elevator, a coat-room, and a dining-room beyond. There was also a passageway on the side, where persons could pass from the office down stairs to the basement, where there was a barber's shop, a stand for the sale of newspapers and periodicals; also a billiard-room, with a bar-room about twenty feet by ten, partitioned therefrom, in one corner, which was entered by a door from the billiard-room. The billiard-room could be entered by a door from the outside, also by passing through the barber's shop from the outside, and also through a passageway from outside around the barber's shop. To get to the bar-room, it was necessary to pass through the billiard-room.

Two officers testified that, on July 12, 1887, they entered the hotel at the office and passed therefrom down the side passageway, through the billiard-room, into the bar-room, where they found a man in attendance whom they did not know; that they, with a search-warrant, seized a number of bottles of intoxicating liquor from behind and about the bar; and that, when they passed through the office-room, they saw the defendant moving about there.

Three persons testified to purchasing liquor at the bar on three different occasions; that at one time they passed through the barber's shop to the billiard-room, and at another time from the office down the side passageway mentioned. Two of them were paid detectives, and one was Hugh Montgomery, a clergyman, who said he purchased it to get evidence of selling liquor against the defendant. None of these witnesses testified to seeing or knowing the defendant at any time, and they did not know the person behind the bar who sold it to them.

Jason L. Dexter, the sheriff of the county, testified that he had seen the defendant about the office, looking at the books, writing, and giving directions; that he had also seen a man named Pease,

and also one named Weeks, doing the same thing during the period.

A. J. Church, a minister, testified that he had seen the defendant about the office of the hotel giving directions during the period ; that on one occasion he had called for a guest who was stopping there ; and that the defendant took his card and directed a servant to carry it to the guest's room, and the witness went up there.

No person testified to seeing the defendant in the basement at any time; and he offered no evidence in defence, except as to the reputation for truth of some of the witnesses for the government.

The witness Church testified that he had been active in the prosecution. He was inquired of whether he had had any conversation with Hatfield, the complainant, about the matter. He replied that he had. The defendant's counsel asked him what that conversation was. This was objected to; and the judge excluded it, on the ground that Hatfield was not a witness, and that statements by him were not material. It was not contended by the defendant that the conversation was offered to show that Church had made any statements contradicting or modifying his testimony as given. The defendant excepted to its exclusion.

During the closing argument, the counsel for the defendant relied mainly upon the point that there was no proof that the defendant exercised any control over the bar-room. He said in substance : " But, gentlemen, if you acquit Mr. Brownell of this charge, how will you answer the question of your neighbors and friends as to why you did it? You will answer it as your own consciences must feel here. It was not proven. The government failed to convict him." Here the judge interposed, and said that such a line of argument was not proper. The counsel replied that he regarded it as a legitimate and proper line of argument, and requested the judge to have his directions put in writing. This was done, as follows: " In so far as counsel for the defendant desires to instruct the jury what reasons they may hereafter give to anybody who chooses to talk with them about their verdict, for giving their verdict, the counsel for the defendant is stopped by the court." To this the defendant excepted.

In his charge to the jury, relative to the fact that the defendant did not testify as a witness, the judge, after charging the jury fully and accurately as to the defendant's rights under the statute when not a witness, used the following language : " He is under the protection of the constitutional right to sit there, and you are not to say to yourselves that, if this thing is not so, he could explain it ; but you are to take it as if he were mentally and physically unable to testify.   But, gentlemen, this principle does not apply to witnesses other than the defendant, whom he can produce here ; and if you find, for instance, upon the question of the proprietorship of that hotel, that he had it in his power to produce witnesses here not known to the government, who could give you further light upon that question, and he does not choose to do it, you may take that fact into consideration when you come to consider whether there is any reasonable theory consistent with his non-proprietorship of that hotel and with the evidence.   I do not mean to say that his failure to produce the witnesses here will fill up any gap, if you find any, in the evidence of the Commonwealth, but only that when you are to consider the reasonableness of any explanation of his acts here, if any have been proved, with regard to that hotel, consistent with his not being the proprietor of it, you may take into consideration the fact whether or not there is other evidence in his power upon that question which he could place before you."

The counsel for the defendant, at the close of the charge, said to the judge, that, before taking exceptions, he wished to call attention to the fact that the real proprietor, or person in charge, could not be compelled to testify.   The judge replied : " I think that is a fair criticism ; and I will modify that to say, gentlemen of the jury, that what I have just said about witnesses whom the defendant could produce does not apply to any person who was the actual proprietor, or in charge.   The defendant cannot be presumed or expected to produce here, to make testify, the actual proprietor himself."   To the foregoing instructions the defendant excepted.

The jury returned a verdict of guilty ; and the defendant alleged exceptions.

*J. Brown*, for the defendant.

*H. C. Bliss*, Assistant Attorney General, for the Commonwealth.

W. ALLEN, J. It was proper for the counsel for the defendant to impress upon the jury their duty to acquit the defendant if his guilt was not proved by the evidence in the case, and to remind them that, whenever they should have a proper occasion to give a reason for acquitting the defendant, it would be sufficient to say that his guilt was not proved. The counsel had a right to present this thought in a logical or in a rhetorical form; he was at liberty to dramatize it in imaginary dialogue, and to illustrate and enforce it by imaginary occasions. The counsel in his argument suggested an occasion on which the jury might be asked the reason why they acquitted the defendant, and the answer which they would give. The language put into the mouth of the jurors is entirely proper and unobjectionable; the impropriety, if any, must have been in the supposed occasion of uttering it. The supposed occasion was the inquiry by friends and neighbors of the jury why they acquitted the defendant, and the supposed impropriety must have consisted, either in the implied suggestion that the jury might have in mind the opinions of their friends and neighbors, or in the suggestion that the jury might at some future time state to their friends and neighbors the grounds of their verdict.

Any attempt to influence a verdict by outside opinion and sentiment is improper, but an appeal to the jury not to be influenced by such opinions and sentiments is proper; and such appeal involves a recognition of the fact that the thought of such opinions may be in the mind of the jury. It is not an assertion of a fact, but the recognition of a possibility. There was no other suggestion of outside influences in the case at bar than was involved in warning the jury against them.

We see no impropriety in the other suggestion involved, — that, if the defendant was acquitted for want of proof, the jury were at liberty to say, in answer to questions of their friends and neighbors, that the proof was not sufficient. No question of disclosing the secrets of the jury-room, or of calling a juror to account for his verdict, is involved. The suggestion is, that the juror may voluntarily and on his own account make a statement of the true grounds on which he rendered his verdict. It was made to influence the jury to render their verdict upon the evidence, without regard to the opinions of others. Whether the

exigencies of the defence called for such an appeal, and in what form it can be most effectively made, the court cannot know; that must be left to the discretion of counsel, within the limits of decorum and propriety. If a juror and his neighbor have, in common, information not in evidence, which satisfies them that the defendant is guilty, or if the jury know that the defendant is held to be guilty in common repute among their neighbors, it is still their duty to acquit him if the evidence does not prove him guilty. In such a case, the jurors could not but have in mind that outside knowledge and opinion, and it might be difficult for them to resist the influence of it, and to render a verdict solely upon the evidence. The reflection that they were not obliged to be forever silent, but could at some time explain that their verdict was rendered on the evidence before them, and not upon outside facts and opinions, might aid them in arriving at a true verdict, and would be proper for them to make; and we think that it is a consideration which counsel have a right to present to them. It was not for the defendant to show that the argument was particularly pertinent or applicable to his case. That is not matter of inquiry. It is not addressed to a known, but to a possible influence. The liability of the influence to exist, not its actual existence, makes the appeal proper.

As the defendant had a right to make the argument in the form in which his counsel put it, and as the considerations he desired to present were proper to be presented to the jury, the defendant was aggrieved by not being allowed to pursue his argument, and by the practical ruling of the court that the consideration was not proper to be regarded by the jury.

We do not find any other error in the rulings of the court.

*Exceptions sustained.*