COMMONWEALTH *vs.* ALFRED J. THERRIEN.

Middlesex. March 1, 1971. — May 12, 1971.

Present: TAURO, C. J., SPALDING, SPIEGEL, REARDON, & BRAUCHER, JJ.

*Practice, Criminal,* Double jeopardy, Plea, Waiver, Voir dire, Judicial discretion, Disclosure of evidence before grand jury, Discovery, Sequestration of witnesses. *Constitutional Law,* Double jeopardy. *Waiver. Search and Seizure. Jury and Jurors. Pleading, Criminal,* Bill of particulars.

Acceptance by a judge before trial of a plea of guilty of murder in the second degree by a defendant indicted for murder in the first degree did not constitute an inferential finding that the defendant was not guilty of first degree murder, and, upon the defendant withdrawing his plea of guilty of second degree murder, his trial on the charge of first degree murder was not barred on the ground of double jeopardy. [505]

Where a defendant indicted for first degree murder had pleaded guilty of second degree murder, withdrawal of that plea by the defendant, who was carefully advised by his counsel and by the judge, operated as a voluntary and knowing waiver of an alleged defence of double jeopardy as a bar to trial on the first degree murder charge. [505]

A search by police of the apartment of the defendant in a criminal case "with the permission of" a co-occupant of the apartment was valid against the defendant. [506]

On appeal from a conviction of murder in the first degree with a recommendation by the jury that the death penalty be not imposed and a sentence of the defendant to life imprisonment, he had no standing to raise the question whether the death penalty is "cruel and unusual punishment" under the Eighth Amendment of the United States Constitution. [506]

At a murder trial, there was no merit in objections by the defendant to the selection of the jury in view of introductory remarks and questions to the jury panel by the judge, or in an argument by the defendant that he had been prejudiced by the exclusion from the jury panel of persons under twenty-five years of age. [506–507]

There was no error or abuse of discretion at a murder trial in denial of requests by the defendant for a voir dire examination of police witnesses who were to testify concerning oral confessions of the defendant, even though in some ways such testimony was inconsistent with the witnesses' testimony at a pre-trial hearing [507]; for information concerning such confessions [507]; for a pre-trial inspection of the grand jury minutes, in the absence of a showing of a particularized need [508]; for a list of all persons interviewed by the Commonwealth [508];

for general discovery [508]; or for a voir dire on the Commonwealth's opening [508].

Where the Commonwealth's answers to a motion by the defendant for a bill of particulars in a criminal case specified the time, place, and manner of committing the crime charged, there was no abuse of discretion in denial of requests by him for answers to portions of the motion concerning the "act or acts" committed or "means" employed by him. [508]

At a criminal trial, there was no error in excepting from sequestration of witnesses a prospective Commonwealth witness who was essential to the management of the case. [508]

INDICTMENTS found and returned in the Superior Court on July 10, 1967.

A motion to dismiss was heard by, and the cases were tried before, *Moynihan, J.*

*Joseph A. Todisco (Samuel B. Cinamon & Michael R. Pizziferri* with him) for the defendant.

*Terence M. Troyer,* Assistant District Attorney, for the Commonwealth.

SPALDING, J. These are appeals under G. L. c. 278, §§ 33A–33G, from convictions under indictments charging murder in the first degree, assault with intent to murder, assault with a dangerous weapon, armed robbery while masked, and theft of a motor vehicle.

There was evidence at the trial from which the jury could find that the defendant and another set out to rob someone. While driving through Framingham on the evening of June 3, 1967, they observed a woman alone in Natoli's Farm Market. The defendant, carrying an M–1 carbine and a pistol, approached the woman, Mrs. Pasqualina L. Natoli. He told her it was a holdup. Thinking it was some kind of a joke, she laughed. In response the defendant shot her in the heart. She fell near the entrance of the store and died shortly thereafter. The two robbers then fled. Remembering that they had forgotten to take any money, the defendant told his accomplice to go back and get it. While the accomplice was coming out of the store with the cash register, a car pulled up. A youth named Richard Adams got out and walked toward Mrs. Natoli. The defendant, across the street, took aim with the carbine and shot Adams

in the groin. He later recovered from this wound. The two then drove off. They stopped to open the cash register, found and divided $34 and threw the register away. While driving through Weston on their way to Boston, they were observed by police in a cruiser. The police gave chase and stopped the defendant's car. When one of the officers got out of the cruiser, the defendant jumped out of his car, aimed the carbine at him and told him to "freeze." The other officer got out of the car and the defendant pulled the trigger, but the gun misfired. He put another cartridge in the chamber and pulled the trigger again. Again the gun misfired. By this time the officers were shooting at him. He got back in the car, put it in reverse, and slammed into the police cruiser. He then sped off, sideswiping cars he met so that the pursuing police would have to stop and aid them. After a while the defendant and his accomplice abandoned the car and stole another, in which they escaped to Connecticut. The defendant was arrested the following day in Connecticut and at a police station there confessed to the substance of the foregoing.

The defendant and his alleged accomplice were indicted in July, 1967. On March 13, 1968, after eight jurors had been chosen, they pleaded guilty to all the indictments except that charging them with murder in the first degree, to which they pleaded guilty to murder in the second degree. The district attorney recommended that this latter plea not be accepted and asked that a police officer be heard. Following the statement of this officer, the judge accepted the pleas saying: "I would doubt whether a jury would impose the death penalty on these people because of their age [the defendant was twenty and his alleged accomplice sixteen], anyway. . . . In all probability, there would be a recommendation for clemency which would result in a life sentence." He then sentenced both defendants to life imprisonment.[1]

[1] One serving a life sentence for second degree murder is eligible for parole, whereas one who is convicted of first degree murder with a recommendation that the death penalty not be imposed shall be imprisoned for life and not eligible for parole unless the sentence is commuted by the Governor and Council. See G. L. c. 265, § 2, as amended through St. 1956, c. 731, § 12.

On May 10, 1968, both defendants filed motions asking leave to withdraw their pleas of guilty. On March 14, 1969, following a hearing, these motions were granted. The judge at the hearing asked the defendant several times if he realized that by withdrawing his plea he was subjecting himself to trial on a first degree murder charge. The defendant answered in the affirmative. While the defendant's motion was phrased in constitutional terms and included charges of fear, coercion, and inadequate representation of counsel, the judge found no basis for such claims. He, himself, elicited from the defendant his chief motivation: "I now think I can be found not guilty." In allowing the motion, the judge commented: "The law cannot protect fools from themselves . . . far be it from me to deny you your right to be tried for first degree murder. . . . I had serious misgivings myself as to whether I should entertain your pleas to second degree murder, but I was swayed, perhaps by your youth. Let me tell you, I wouldn't do it again . . . ."

Shortly thereafter, the defendants moved to dismiss so much of the indictment as charged murder in the first degree, arguing that the above outlined procedure constituted former jeopardy on that charge. After a hearing, the motion was denied. The two cases were then severed for trial. The defendant was found guilty on all indictments. With respect to the murder indictment the jury recommended that the death penalty be not imposed.

1. The defendant's principal contention is that his trial on the charge of murder in the first degree was barred by the double jeopardy provisions of the Fifth Amendment of the United States Constitution, or alternatively, by our statutes and case law. There is no doubt that the Fifth Amendment is applicable to the States by reason of the Fourteenth Amendment. *Benton* v. *Maryland*, 395 U. S. 784. *Commonwealth* v. *Berryman, ante*, 127. We also recognize that an acceptance of a guilty plea by a judge acts as former jeopardy as to the crime pleaded to as surely as does a finding of guilty by a jury. *Commonwealth* v. *Goddard*, 13 Mass. 455. Anno. 75 A. L. R. 2d 683, 686–691.

"By pleading guilty, all facts well charged in the indictment were admitted, trial by jury was waived, and nothing was left to be done but pass sentence." *Commonwealth v. L'Italien,* 352 Mass. 424, 426. Two further questions are raised by this argument, however. Either resolved against the defendant is dispositive of the issue. The first is whether the defendant was actually ever placed in jeopardy of a first degree murder conviction before his trial, and the second is whether, if there was jeopardy, it was waived by him when he retracted his plea.

In answering the first question we turn to the language of the case on which the defendant seems to place his heaviest reliance, *Green v. United States,* 355 U. S. 184. There the United States Supreme Court reversed a first degree murder conviction on the grounds that the jury before which the defendant had been previously tried had before it a first degree murder indictment and yet returned only a verdict of second degree murder. The court held this verdict was sufficient to inferentially acquit the defendant of first degree murder. In reaching its conclusion the court said: "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and *possible conviction* more than once for an alleged offence. . . . At Green's first trial the jury was *authorized to find him guilty* of either first degree murder . . . or, alternatively, of second degree murder. . . . Green was in *direct peril of being convicted* . . . for first degree murder at his first trial. . . ." (emphasis supplied) (at pp. 187–190).

Unlike the jury in the *Green* case, the judge here did not have the option to find the defendant guilty of first degree murder. His only choice was to accept or reject the plea to second degree murder. Had he rejected it, the defendant would then have been tried to a jury on the first degree murder charge. No one would reasonably argue that a jury trial following rejection of a guilty plea to second degree murder would be barred because of former jeopardy on the ground that the judge by rejecting the plea had inferentially

found the defendant guilty of first degree murder. Also we are of opinion that acceptance by the judge of a defendant's plea to second degree murder does not constitute an inferential finding of not guilty of first degree murder for the purposes of double jeopardy. The question of guilt of first degree murder was one which the judge did not have the power to decide, and one which was never before him.[1] Therefore the defendant was never placed in jeopardy by the judge's consideration of his guilty plea of anything more than that to which he pleaded guilty. That the judge chose to accept the plea (whether or not based on considerations of youth and probable outcome of a jury trial) does not change this conclusion.[2]

Even if we are to conclude, which we do not, that jeopardy attaches in such a case, we are of opinion that the defendant voluntarily and knowingly waived the defence of former jeopardy as a bar to further proceedings on the first degree murder indictment by retracting his plea to second degree murder. As the New York Court of Appeals has said in a case closely resembling the present, "[The withdrawal of the guilty plea to second degree murder] removed . . . the only prop which sustained alike the conviction, as also the constructive acquittal, of the defendant of the higher crime. . . . [T]he withdrawal of the plea involved the waiver of all which depended on the plea, and this included a waiver of the benefit of the implication which existed, so long as the plea remained, of an acquittal of the higher crime." *People* v. *Cignarale*, 110 N. Y. 23, 32.

This conclusion violates no fundamental principles of justice. The defendant was carefully advised on the consequences of all his actions and motions at all stages, both by

---

[1] See G. L. (Ter. Ed.) c. 265, § 1, which provides that "[t]he degree of murder shall be found by the jury." And see further G. L. c. 263, § 6, as amended through St. 1933, c. 246, § 1, which provides for waiver of jury trial "in any criminal case other than a capital case."

[2] This same result was reached on similar facts in *Commonwealth* v. *Rollins*, 354 Mass. 630, 632–633. The result reached in *Commonwealth* v. *Chase*, 348 Mass. 100, 104, involved the trial of a juvenile offender under the provisions of G. L. c. 119, §§ 52–63, and is not controlling here. *Commonwealth* v. *Thomas*, 358 Mass. 771. Nor is G. L. (Ter. Ed.) c. 263, §§ 7 and 8, of aid to the defendant.

his counsel and by the judge. That his maneuver here did not succeed is a further illustration that "a criminal prosecution is more than a game."[3]

2. The defendant's argument that the search of his apartment was unlawful is frivolous. His counsel conceded at the close of the Commonwealth's case that none of the items seized were introduced at the trial. Moreover, even if they had been, the trial judge made a specific finding, supported by evidence, after a hearing on the motion to suppress, that the police made the search "with the permission of one of the occupants or tenants of the apartment." Since a co-occupant, having equal authority over the premises, consented to the search, it was valid against the defendant. *Commonwealth* v. *Connolly*, 356 Mass. 617, 624. *Commonwealth* v. *Martin*, 358 Mass. 282, 288.

3. The defendant's arguments concerning capital punishment are confused, but as far as they relate to the question whether the death penalty is "cruel and unusual punishment" under the Eighth Amendment of the United States Constitution the short answer is that the defendant has been sentenced only to life imprisonment and thus does not have standing to raise this question here. *McDowell* v. *United States*, 274 F. Supp. 426, 429 (E.D. Tenn.). In so far as this argument relates to the selection of the jury, it is without merit. No appropriate motion for a mistrial challenging the composition of the jury or the jury panel was made. The motion referred to in the defendant's brief was made at the hearing at which he pleaded guilty to second degree murder after eight jurors had been selected. Even if such a motion had been made at the trial, however, it would not have been error to deny it. The judge gave essentially the same introductory remarks on capital punishment to the jury as those approved in *Commonwealth* v. *Nassar*, 354 Mass. 249, 255, n. 4. He additionally questioned each juror, asking in substance: "Do you have any views on capital punish-

---

[3] *Commonwealth* v. *Berryman*, *ante*, 127. While nothing turns on it in this case, we note that while the jury were deliberating the fate of the defendant, he again asked leave to plead guilty to second degree murder. This time the judge refused to accept his plea.

ment that would prevent you from finding a defendant guilty of an offense punishable by death even though you were convinced on the evidence of his guilt beyond a reasonable doubt?" *Commonwealth* v. *Sullivan*, 354 Mass. 598, 608. A careful reading of the transcript reveals that the other cryptic arguments advanced by the defendant concerning this issue are resolved against him in *Commonwealth* v. *Mangum*, 357 Mass. 76.[4] His further argument that exclusion of those persons under twenty-five years of age from the jury panel was prejudicial to him requires no discussion. *King* v. *United States*, 346 F. 2d 123, 124 (1st Cir.). See *Commonwealth* v. *Slaney*, 350 Mass. 400, 401–402.

4. We now consider the final group of the defendant's assignments of error which involve discretionary rulings made by the judge during the trial.

(a) The judge denied voir dire requests concerning police witnesses who were to testify concerning oral confessions of the defendant. In view of the pre-trial hearing at which the judge had ruled favorably on the admissibility of this testimony, we find no abuse of discretion even though the defendant in making the motion contended that the testimony given at trial was in some ways inconsistent with that at the earlier hearing. The inconsistencies were not substantial and he was given every opportunity to explore them in cross-examination. *Commonwealth* v. *Nassar*, 354 Mass. 249, 259.

(b) Nor was there error in denying the defendant information concerning oral confessions given by him to various police officers. Some statements of the defendant were furnished to him. These turned out to be substantially the same as the testimony of the police officers at the pre-trial hearing on the motion to suppress. The granting of such a motion is discretionary with the judge and no abuse of discretion is shown on the record before us. *Commonwealth* v. *Chapin*, 333 Mass. 610, 618, cert. den. 352 U. S. 857.

---

[4] The defendant's argument that the judge's questions themselves forced the jurors to change their minds is supported neither by experience nor by the transcript, and is entirely speculative.

(c) As there was no showing of a particularized need, the trial judge did not abuse his discretion in denying a motion for pre-trial inspection of grand jury minutes. *Commonwealth* v. *Carita,* 356 Mass. 132.

(d) The defendant's motion to be furnished with a list of all prospective Commonwealth witnesses was granted. There was no error in denying his further request for a list of all persons interviewed by the Commonwealth. *Commonwealth* v. *Salerno,* 356 Mass. 642. Nor was there any abuse of discretion in denying his other generalized discovery requests (*Commonwealth* v. *Marsh,* 354 Mass. 713, 721, *Commonwealth* v. *Kiernan,* 348 Mass. 29, 34), nor in denying a voir dire on the Commonwealth's opening.

(e) Certain portions of each of the defendant's motions for bills of particulars were denied. These portions concerned the "act or acts" on which the Commonwealth intended to rely and the "means" employed in committing the crimes charged. While the defendant is entitled to such particulars as may be necessary to give him reasonable knowledge of the nature and grounds of the crime charged, anything beyond this is within the court's discretion. Since the particulars furnished included the time, place, and manner of the crime charged, we can find no abuse of discretion in these limited denials. *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 222–223. *Commonwealth* v. *Baron,* 356 Mass. 362. G. L. (Ter. Ed.) c. 277, § 40.

(f) The objections concerning leading questions do not merit individual discussion. *Guiffre* v. *Carapezza,* 298 Mass. 458, 460.

(g) The judge excepted from sequestration a prospective Commonwealth witness, one Lieutenant Joyce. This same witness also sat with the district attorney during the hearing on the motion to suppress. There is no error in such an exception from sequestration if the prospective witness, as the judge impliedly found, is essential to the management of the case. Wigmore, Evidence (3d ed.) § 1841.

(h) We have considered all of the questions argued by

the defendant and have dealt with such of them as require discussion.

5. In accordance with our duty under G. L. 278, § 33E, as amended through St. 1962, c. 453, we have reviewed the entire evidence and are of opinion that justice does not require us either to order a new trial or to direct the entry of a verdict of a lesser degree of guilt.

*Judgments affirmed.*