COMMONWEALTH *vs.* CLIFFORD F. VANDERPOOL, THIRD.

Hampden.   March 3, 1975. — May 14, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Homicide.   Practice, Criminal,* Charge to jury, Sequestration of witnesses, Capital case.

At the trial of a murder case, there was no error in a refusal of the judge to instruct the jury on manslaughter where, accepting the defendant's version of the facts and resolving all reasonable inferences in his favor, a finding of manslaughter would not have been justified. [745-747]

Where, at a murder trial, a loud noise was heard and the defendant became ill and vomited in the courtroom, there was no error in a refusal of the judge to allow an explanation of the incident to be given to the jury. [747-748]

Although the better practice in a capital case is to sequester the witnesses, a refusal to do so lies within the sound discretion of the judge. [748-749]

In the circumstances of a case of murder by shooting, where it appeared, inter alia, that all those involved in the homicide were under the influence of alcohol or drugs, that an apparent intention of the defendant in approaching the victim was to settle a previous conflict and not to intensify it, that the defendant did not fire the fatal shot, and that the defendant suffered from disabling injuries as a result of wartime service, a conviction of first degree murder was reduced to second degree murder in the interest of justice pursuant to G. L. c. 278, § 33E. [749-751]

INDICTMENT found and returned in the Superior Court on March 12, 1971.

The case was tried before *Noonan,* J.

*Margaret D. McGaughey* for the defendant.

*William W. Teahan, Jr.,* Special Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   The defendant was convicted of murder in the first degree and appeals pursuant to G. L. c. 278,

§§ 33A-33G. He contends that the trial judge erred (1) in not instructing the jury that they could find the defendant guilty of manslaughter, (2) in refusing to allow the defendant to explain his behavior following an incident at the trial, and (3) in refusing to sequester the witnesses. He also urges that we exercise our powers under § 33E and reduce his conviction to murder in the second degree or manslaughter. Although we find no legal error, we are convinced that justice will best be served by reducing the conviction to murder in the second degree.

The evidence in this case was conflicting. Based on their verdict, it is apparent that the jury believed the prosecution version of the facts. Briefly, the jury could have found that the defendant and other members of a club, the Outcast Renegades, were involved in an altercation with the victim at a bar early in the afternoon after which the defendant spent the remainder of the day visiting other bars with various members of the club. At some point, he heard a rumor that the victim planned to press criminal charges as a result of the earlier fight, and the defendant and one Antonio Torres went looking for him to determine if the rumor were true. Torres had a gun in his possession, the same gun a member of the club, possibly the defendant, told him to get earlier in the day.

The defendant and Torres proceeded to the National Cafe where the victim was watching a card game in the back room. The defendant entered through the rear door, confronted the victim and asked him if the rumor were true. When the victim admitted that he intended to apply for a warrant for the defendant's arrest, the defendant responded, "[W]e'll get you," and punched the victim, whereupon two shots were fired, one of them killing the victim.

It is undisputed that Torres actually fired the shots. Torres testified that he was drunk and high on "acid" and did the shooting at the urging of the defendant, who

yelled, "Shoot him, Tony, shoot him, Tony." None of the eyewitnesses to the shooting testified to hearing the defendant's alleged statement, but otherwise their testimony essentially corroborated that of Torres.

The defendant's testimony as to the events on the day of the homicide differed sharply from the testimony of Torres and other witnesses for the prosecution. The defendant claimed that he was no longer a member of the Outcast Renegades and that he was in disfavor with members of the club. He testified that he interceded in the earlier fight between the victim and members of the club in order to act as a peacemaker.

He stated that he went to the National Cafe alone to get one last drink before going home. On his arrival, he observed the victim and approached him regarding the rumor because of his desire to clear up the matter and prevent further trouble. When the victim stated that he planned to press charges and called the defendant by his brother's name,[1] an argument ensued. The defendant and the victim swung at each other, but since both were somewhat intoxicated, neither landed any blows. Suddenly, the defendant heard a shot, imagined himself back in Viet Nam[2] and fled. He returned home, where he was later questioned and arrested by police.

1. There was no error in the trial judge's refusal to charge the jury on manslaughter. While it is true that "[i]n a homicide case, the trial judge should charge on the issue of manslaughter where any view of the evidence will permit a finding that the offence is manslaughter

---

[1] In the course of this confrontation, the victim addressed the defendant as Chuck. When the defendant told the victim that Chuck was his brother and that he was Cliff, the victim responded by calling the defendant a liar.

[2] The defendant testified regarding his military service during the Viet Nam war. He had been wounded on two occasions and was hospitalized and treated for shell shock. He reacted to loud noises and had to give up two jobs after his military discharge because of his reactions to noises at work.

and not murder," *Commonwealth* v. *LePage*, 352 Mass. 403, 419 (1967), it is also well settled that the judge may not charge on a hypothesis not supported by the evidence. *Commonwealth* v. *Campbell*, 352 Mass. 387, 392 (1967). *Commonwealth* v. *Costa*, 360 Mass. 177, 184 (1971). *Commonwealth* v. *Caine*, 366 Mass. 366, 375 (1974).

In deciding whether a manslaughter instruction is supported by the evidence, all reasonable inferences must be resolved in favor of the defendant. "The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. . . . However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true." *Commonwealth* v. *Campbell, supra,* at 398, quoting from *People* v. *Carmen,* 36 Cal. 2d 768, 773 (1951). In this case, however, even accepting the defendant's version of the facts, there was no basis for a charge on either voluntary or involuntary manslaughter.

Voluntary manslaughter is "a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Soaris,* 275 Mass. 291, 299 (1931). Accord, *Commonwealth* v. *Hartford,* 346 Mass. 482, 490 (1963); *Commonwealth* v. *Caine,* 366 Mass. 366, 375 (1974). There is no evidence here from which the jury could have found the defendant guilty of voluntary manslaughter. The evidence is undisputed that both the defendant and the deceased were somewhat intoxicated. Even if the jury had believed that the parties swung at each other, no blows were ever landed, and the situation could not have objectively met the requirements of "combat," "passion" or "heat of blood." See *Commonwealth* v. *Leate,* 352 Mass. 452, 457-458 (1967). Similarly, the jury could not have found reasonable provocation, as we have often repeated that words alone do not constitute adequate provocation. *Common-*

wealth v. *Webster,* 5 Cush. 295, 305 (1850). *Common-wealth* v. *Hartford, supra,* at 491. *Commonwealth* v. *Leate, supra,* at 458. Accordingly, there was no error in the judge's refusal to charge the jury on voluntary manslaughter.

Involuntary manslaughter is an unlawful homicide unintentionally caused by an act which constitutes such a disregard of probable harmful consequences to another as to amount to wanton or reckless conduct. *Common-wealth* v. *Welansky,* 316 Mass. 383, 399 (1944). *Commonwealth* v. *Campbell,* 352 Mass. 387, 397 (1967). *Commonwealth* v. *McCauley,* 355 Mass. 554, 560 (1969). *Commonwealth* v. *Kinney,* 361 Mass. 709, 712 (1972). On the record before us, there is no view of the evidence which would justify a finding of involuntary manslaughter, and there was no error in the trial judge's refusal to charge otherwise.

2. In the course of the testimony by one Leo Derosiers, a prosecution witness, the defendant became ill and vomited when a loud noise was heard in the court room.[3] A recess was called and the defendant was examined by a doctor who found him able to continue with the trial. The defendant asked that the statement of the physician, explaining the defendant's reaction, be read to the jury but the trial judge refused subject to the defendant's exception. There is no merit to the defendant's contention that the judge's failure to allow an explanation of the incident was error.

"A display of emotion in one charged with a crime is not unnatural; it is as consistent with innocence as with guilt." *Commonwealth* v. *Favulli,* 352 Mass. 95, 116 (1967). Thus, it was not an abuse of discretion for the judge to refuse the defendant's request to explain the incident.

---

[3] It is unclear from the record how much of this incident occurred in the presence of the jury.

We note, however, that where there is any real danger that, in reaching their verdict, the jury may consider some extraneous factor, and not only the evidence properly presented, it is desirable for the trial judge to give cautionary instructions. See *Commonwealth* v. *Brownell*, 145 Mass. 319, 323 (1887); *Commonwealth* v. *Brown*, 364 Mass. 471, 479-480 (1973); *Commonwealth* v. *Caine*, 366 Mass. 366, 372 (1974). Cf. *Commonwealth* v. *Mutina*, 366 Mass. 810 (1975). The content and timing of such instructions are within the judge's discretion as incident to his control over the conduct of the trial. See *Commonwealth* v. *Coyne*, 228 Mass. 269, 270 (1917); *Commonwealth* v. *Fleming*, 360 Mass. 404, 409 (1971). In the instant case, the judge, in his final charge to the jury, stated, "The case must be decided by you on the evidence presented right here in this courtroom and upon nothing else." This served as a clear instruction to the jury that they were not to consider the illness of the defendant as it occurred in the court room. There is no indication that the verdict was "otherwise than on the facts and the applicable law." *Commonwealth* v. *Favulli, supra.*

There is no merit to the defendant's further contention that the incident tended to impeach his credibility and thus entitled him to rehabilitate himself by way of explanation. The cases cited in support of this theory, *Commonwealth* v. *Smith*, 329 Mass. 477 (1952), *Commonwealth* v. *Fatalo*, 345 Mass. 85 (1962), and *Commonwealth* v. *Kerrigan*, 345 Mass. 508 (1963), all involved impeachment on cross-examination and are not relevant to the instant case.

3. There was no error in the refusal by the judge to sequester the witnesses. It is well settled that sequestration of witnesses lies within the sound discretion of the trial judge. *Commonwealth* v. *Blackburn*, 354 Mass. 200, 205 (1968). *Commonwealth* v. *Therrien*, 359 Mass. 500, 508 (1971). *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 518 (1972). Although the better practice in

capital cases is to allow such a procedure, we cannot say that failure to do so in this case was an abuse of discretion.

4. We have determined that there was no error in the conduct of the trial. Nevertheless, we have the further duty under G. L. c. 278, § 33E, to consider the whole case broadly to determine whether justice requires a change in the verdict. *Commonwealth* v. *Jones,* 366 Mass. 805, 806-807 (1975), citing *Commonwealth* v. *Williams,* 364 Mass. 145, 150 (1973). "If upon our examination of the facts, we should, in our discretion, be of opinion that there was a miscarriage of justice in convicting the defendant of murder in the first degree, and that a verdict of guilty of murder in the second degree or of manslaughter would have been more consonant with justice, it is now our power and duty so to declare." *Commonwealth* v. *Williams, supra,* quoting from *Commonwealth* v. *Baker,* 346 Mass. 107, 109 (1963). We are fully aware that our powers under § 33E are to be used with restraint. *Commonwealth* v. *Lannon,* 364 Mass. 480, 486 (1974).

"In *Commonwealth* v. *Williams,* 364 Mass. 145 (1973), we held that, although the jury were warranted in their verdict, the thrust of the evidence required a reduction of a verdict of murder in the first degree to murder in the second degree to avoid a miscarriage of justice." *Commonwealth* v. *Jones, supra,* at 808. In the instant case, while we think that the evidence may have been sufficient to warrant a verdict of murder in the first degree, we believe that on the weight of the evidence it would be more consonant with justice to reduce the verdict to murder in the second degree.

The facts reveal that all those involved in the homicide were under the influence of alcohol or drugs. In approaching the victim, the defendant's apparent intention was to settle a conflict, not to intensify it. There is no indication that the defendant left the first altercation with the idea of revenge and thereafter

proceeded to carry out his plan. On the contrary, the undisputed evidence indicates that the defendant, prior to the killing, had the intention of merely explaining his position and reconciling his difficulties with the victim. The matter was further complicated by the victim's apparent confusion of the defendant's name with that of his brother. In this aspect, this case is distinguishable from those cases where we have declined to reduce a verdict, *Commonwealth* v. *Pratt*, 360 Mass. 708, 715 (1972); *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 311-312 (1973), for in each of those cases, "there appears to have been a period of reflection and premeditation after the original difficulties between the parties and before the ultimate homicide." *Commonwealth* v. *Stillwell*, 366 Mass. 1, 6 (1974).[4] We can find no such period of reflection or premeditation in this case. In all the circumstances the killing here may be described as "senseless." *Commonwealth* v. *Jones, supra*, at 808.

In addition to the evidence discussed above, the following facts, although not decisive, have received our consideration. The defendant did not fire the fatal shot, the shooting having been done by Torres, who was the crucial witness against the defendant. Torres had not been tried or sentenced for his role in the homicide at the time of the defendant's trial. He was thereafter allowed to plead guilty to murder in the second degree. Additionally, the defendant, who testified in his own behalf, was twenty-two years old, married with two small children, and suffered from disabling injuries as a result of his service in the Viet Nam war. "There was no evidence introduced of any prior criminality on the part

---

[4] *Commonwealth* v. *Deeran*, 364 Mass. 193 (1973), and *Commonwealth* v. *Rooney*, 365 Mass. 484 (1974), also cited in *Stillwell* as examples of cases where we refused to reduce a verdict, were both convictions of murder in the second degree. In those cases, it is apparent that the jury did not find the reflection and premeditation necessary for a conviction of murder in the first degree, and there was no occasion for this court to take the action we take here.

of the defendant . . .. G. L. c. 233, § 21. We assume there was none." *Commonwealth* v. *Jones, supra,* at 808.

To conclude, we believe that the defendant's "criminal involvement was not of the nature that judges and juries, in weighing evidence, ordinarily equate with murder in the first degree." *Commonwealth* v. *Williams,* 364 Mass. at 152.

5. The case is remanded to the Superior Court where the verdict of guilty of murder in the first degree and the sentence previously imposed are to be vacated. A verdict of guilty of murder in the second degree shall be entered and sentence imposed thereon.

*So ordered.*