COMMONWEALTH *vs.* JOHN NICHYPOR.

Essex. September 8, 1994. - December 20, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Instructions to jury, Voluntariness of confession, Capital case. *Evidence,* Joint enterprise, State of mind, Admissions and confessions. *Joint Enterprise. Homicide. Felony-Murder Rule. Malice. Constitutional Law,* Admissions and confessions.

At a murder trial there was ample evidence from which the jury could conclude that the defendant was a joint venturer in the murder of the victim by extreme atrocity or cruelty and by felony-murder [211-213]; further, the evidence supported the jury's determination that the defendant participated in a felony (robbery) that clearly posed a risk to human life [213-215], thus supporting the defendant's conviction for the killing of the victim, which was a natural and probable consequence of the felony [215-216].

Evidence at a first degree murder trial did not provide a basis for jury instructions on either voluntary or involuntary manslaughter, and the judge properly refused to give such requested instructions. [216-218]

At a criminal trial in which the voluntariness of the defendant's signed statement to police was not raised, there was no error in the judge's not having instructed on the issue of his own motion. [218-219]

No reason appeared on the record of a murder trial for this court to exercise its power under G. L. c. 278, § 33E, to order a new trial or the entry of a verdict of a lesser degree of guilt. [219]

INDICTMENT found and returned in the Superior Court Department on October 19, 1988.

The case was tried before *John T. Ronan,* J.

*Murray A. Kohn* (*Elliot M. Weinstein* with him) for the defendant.

*Margaret J. Perry,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Convicted of murder in the first degree by reason of extreme atrocity or cruelty and felony-murder, see

G. L. c. 265, § 1 (1992 ed.), the defendant appeals. The defendant's conviction of murder in the first degree was based on joint venture.[1] The defendant claims that the judge improperly: (1) instructed the jury on joint venture; (2) refused to instruct the jury on manslaughter; and (3) failed to instruct the jury on the humane practice rule. The defendant also asks that we exercise our power under G. L. c. 278, § 33E (1992 ed.), and enter a lesser degree of guilt. We affirm the conviction and decline to exercise our power under § 33E in favor of the defendant.

I. *Facts.* We set forth the facts in the light most favorable to the Commonwealth. *Commonwealth* v. *Burnett,* 417 Mass. 740, 741 (1994). On September 28, 1988, the defendant telephoned Kevin Pierce. The two men talked about "rolling a fag" that evening. Shortly after their telephone conversation, the defendant and Pierce went to a restaurant in Gloucester, accompanied by Joshua Halbert. Pierce then telephoned the victim, David McLane. Pierce told the defendant and Halbert that McLane was homosexual.

McLane picked the three men up and drove them to his apartment in Gloucester. The four men drank some alcohol and watched pornographic movies at McLane's apartment. During the movie, Halbert and Pierce went into the kitchen. The defendant remained in the living room with McLane. When Halbert and Pierce reentered the room, Pierce said that he, Halbert, and the defendant were homosexual. McLane, who was sitting on a couch still watching the television, asked Halbert, "Josh, what do you want to do?" Interpreting the question as a sexual overture, Halbert responded, "I'm not into that stuff." Then Pierce approached the victim from behind and locked his arm around McLane's neck. Pierce choked the victim until the victim's face turned purple. During this struggle, the defendant "threw one punch" at the victim, and Halbert clubbed the victim in the head

---

[1] At separate trials, the two other joint venturers, Kevin Pierce and Joshua Halbert, were also convicted. *Commonwealth* v. *Pierce, ante* 28 (1994). *Commonwealth* v. *Halbert,* 410 Mass. 534 (1991).

and groin with an empty whisky bottle stating, "You're going to get hurt, cause I'm not queer."

Halbert then pulled a razor blade from his back pocket and cut the victim's throat several times. Pierce went into the kitchen and grabbed a steak knife, which he thrust into the victim's left temple. Halbert ran to the kitchen and grabbed a second knife, which he placed on the couch. Either Pierce or Halbert picked up the second knife and thrust that through the victim's left temple. One knife was flush with the skin surface with its tip protruding from the right side of the victim's neck; the other knife was out approximately three inches from the skin on the left temple. Pierce repeatedly said, "Die faggot. Die faggot." The victim was "making strange noises." Pierce told the defendant to put a cushion over the victim's face to keep him quiet and muffle his moans. In compliance, the defendant placed a couch cushion over the victim's face. All three men then knelt down in the victim's blood and prayed for forgiveness.

After the attack, the defendant, Pierce, and Halbert took a framed, uncut sheet of dollar bills and a box of coins from the apartment. The defendant took a share of the stolen property. The three men also tried to remove any fingerprints they left in the apartment. One of the men found the victim's automobile keys. After being asked by Pierce and Halbert to drive the victim's automobile, the defendant got into the driver's seat but could not start the automobile. The three men then left the scene on foot. Several days after the killing the police arrested the defendant. The defendant gave a signed statement to the police. Occult blood was found on the defendant's hands, forearms, and the pants he wore on the night of the killing, as well as on the driver's side of the victim's automobile.

II. *Joint venture and extreme atrocity and cruelty.* The defendant's brief suggests that he could not be found guilty of murder in the first degree because he was not a participant in the crime. The defendant argues that he was present and in fear for his life, but that he was not responsible for the murder because he did not act "with a shared criminal

intent to render aid, assistance, or comfort to Halbert and Pierce." He asserts that the judge's instructions on joint venture were erroneous and his conviction for murder in the first degree must be reversed. We do not agree.

There was ample evidence from which a jury could conclude that the defendant was a joint venturer in the murder by extreme atrocity or cruelty and by felony-murder. "A joint venturer is 'one who aids, commands, counsels, or encourages commission of a crime, while sharing with the principal the mental state required for the crime.'" *Commonwealth* v. *Daughtry*, 417 Mass. 136, 138 (1994), quoting *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). The evidence permitted the jurors to determine that the defendant was ready, willing, and able to assist Pierce and Halbert in their criminal assault on the victim. The jury could conclude from the evidence that the defendant was present, saw the escalating violence, and willingly helped his coventurers. See *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983).

There is no error in submitting to the jury the issue of the defendant's guilt based on extreme atrocity or cruelty. The defendant was present in circumstances that would lead a reasonable person to believe that the victim was experiencing pain. His continuing participation in the crime with this knowledge constitutes cruelty. *Commonwealth* v. *Podlaski*, 377 Mass. 339, 346 (1979) ("The victim's extensive and serious injuries certainly warranted a finding that whoever participated in the beating of the victim did so with extreme atrocity or cruelty").

The defendant's conviction could be affirmed solely on extreme atrocity or cruelty. "Where a crime can be committed in any one of several ways . . . [t]hen the defendant should be convicted if it is proved that he committed the crime in any of those ways." *Commonwealth* v. *Chipman*, 418 Mass. 262, 270 n.5 (1994), quoting *Commonwealth* v. *Dowe*, 315 Mass. 217, 219-220 (1943). Both parties, however, have focused on the felony-murder theory of the defendant's conviction and we now address that issue.

III. *Felony-murder instruction.* The judge denied the defendant's request for an instruction that if the jury found that his two coventurers hatched a secret plan unknown to the defendant to murder the victim during the agreed robbery, then they could not convict the defendant as a joint venturer of murder in the first degree by reason of felony-murder.[2] In substance, the judge instructed the jury that regardless whether a separate and independent plan was formulated by Halbert and Pierce to kill the victim, if the killing occurred during the course of the robbery, and the robbery posed an inherent risk to human life, then, if the jurors concluded that the defendant was a joint venturer in that felony, the defendant could be convicted of murder in the first degree by reason of felony-murder.[3]

The defendant challenges the judge's instruction on felony-murder on two grounds. First, the defendant argues that his

---

[2]Specifically, defense counsel requested that the judge "instruct the jury that if they find that the death occurred during independent plan [sic] to kill [the victim] entered into between [the two venturers] . . . [t]hen it was not a killing during the commission of a felony."

[3]The judge instructed the jury that the consequence of a determination that Halbert and Pierce entered an independent plan to murder the victim was as follows: "If it was just an agreement between Halbert and Pierce to . . . murder [the victim], and that murder was undertaken, then . . . depending on the view of it . . . [the defendant] would not be a joint venturer in the crime of murder. But if they had such a plan, and nonetheless the three of them had a plan to commit robbery and that that was the kind of a robbery that raised the . . . inherent risk to human life, and even if [the defendant] didn't know that [the two other joint venturers] had this independent plan to murder, if he joined in the plan to rob and it was a plan to rob in which there was a danger inherent to life and he proceeded in the conscious disregard of that danger, then he would be responsible under The Felony Murder Rule, irrespective of whatever independent plan they had. It depends on the facts every which way."

With respect to the causal connection between the felony and the killing, the judge also instructed the jury that: "Only if you . . . are satisfied beyond a reasonable doubt . . . that there was the undertaking here in that course of conduct, a risk to human life and that nevertheless in conscious disregard of that risk, this unarmed or armed robbery was undertaken in that instance . . . and that death resulted which was causally related to that felonious activity, then that is homicide by operation of this rule, The Felony Murder Rule, is murder and it constitutes under [G. L. c. 265, § 1 (1992 ed.),] murder in the first degree."

intent to engage in unarmed robbery was not transferrable to the killing under the felony-murder doctrine if Pierce and Halbert's murder plan was not a foreseeable consequence of the unarmed robbery. Second, the defendant takes the position that an independent plan to kill between his joint venturers breaks the causal link between the underlying felonious joint venture and the murder.

In *Commonwealth* v. *Matchett*, 386 Mass. 492, 502 (1982), we said that the felony-murder rule under G. L. c. 265, § 1, "does not serve to transform a death, without more, into a murder." The Commonwealth still must establish the malice aforethought required for murder, but the felony-murder rule substitutes the intent to commit the underlying felony for the intent required for the conviction of murder in the first degree. See *Commonwealth* v. *Matchett*, *supra* at 502; *Commonwealth* v. *Watkins*, 375 Mass. 472, 486-487 (1978); *Commonwealth* v. *Devlin*, 335 Mass. 555, 567 (1957); *Commonwealth* v. *Gricus*, 317 Mass. 403, 412 (1944); *Commonwealth* v. *Venuti*, 315 Mass. 255, 258 (1943); *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899). We also have said that only felonies which are inherently dangerous to human life justify application of the felony-murder rule. See, e.g., *Commonwealth* v. *Moran*, 387 Mass. 644, 651 (1982) (because unarmed robbery is "not inherently dangerous to human life," a jury must conclude that in agreeing to participate in the unarmed robbery, "the defendant consciously disregarded risk to human life"). "Where . . . the acts which constitute felonious conduct do not possess a sufficient danger to human life to justify the application of the doctrine of common law felony-murder, the doctrine is inapplicable because there is a failure to establish the requisite state of mind from the forming of the intention to commit the felony." *Commonwealth* v. *Matchett*, *supra* at 507, quoting *Commonwealth* v. *Bowden*, 456 Pa. 278, 287 (1973) (Nix, J., concurring).

Whatever the defendant may have intended when he agreed to "roll[ ] a fag," the evidence supports the jury's determination that after seeing Halbert pull out a razor

blade, and after seeing Halbert and Pierce bring knives from the kitchen and use them on the victim, the defendant knew that the circumstances of the robbery were inherently dangerous to human life. The defendant did not abandon the robbery,[4] but he joined in the criminal attack by trying to punch the victim, and by acceding to Pierce's request to quiet the victim by placing a cushion over the victim's face. See *Commonwealth* v. *Cook, ante* 192 (1994). The underlying felony in which the defendant participated clearly posed a risk to human life and supports a conviction of murder in the first degree based on felony-murder.

We are not persuaded by the defendant's second argument that, because he could not foresee the secret plan between his joint venturers, the killing was not causally linked to the robbery. "[A]s long as the homicide[ ] [was] connected with and incident to the [robbery] and as long as the [robbery and the homicide] took place at substantially the same time and place," then the defendant is guilty of felony-murder. *Commonwealth* v. *Ortiz,* 408 Mass. 463, 466 (1990). Even if a killing were not intended, a participant in an underlying felony which poses an inherent risk to human life is responsible for a killing which is a natural and probable consequence of the felony. *Commonwealth* v. *Moran, supra* at 648 ("The felony-murder rule is that a homicide committed in the commission or attempted commission of a felony is murder"). As a joint venturer, the defendant was responsible for the natural and foreseeable consequences of the robbery, regardless of whether his attempt to throw a punch and his use of the couch cushion were the proximate causes of the victim's death.

In sum, the jury could conclude that the defendant was engaged in a joint venture, see *Commonwealth* v. *Soares,* 377 Mass. 461, 470 (1979), saw the increasingly violent nature of the robbery and joined in the crime. A defendant can-

---

[4]The defendant does not claim nor does the evidence support a claim that the defendant abandoned the robbery. See, e.g., *Commonwealth* v. *Fickett,* 403 Mass. 194, 201 (1988); *Commonwealth* v. *Dellelo,* 349 Mass. 525, 529 (1965).

not escape responsibility by claiming that he was unaware that the violence in which he joined was preplanned by his confederates without his knowledge.

IV. *Manslaughter instruction.* The defendant argues that the issue of the appropriateness of a manslaughter instruction was preserved for appeal by his request at trial for an instruction on "manslaughter A and B." We seriously doubt that the defendant adequately preserved the issue for appellate review. "It is a fundamental rule of practice that where a party alleges error in a charge, he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *McDuffee,* 379 Mass. 353, 357 (1979). We shall assume, for purposes of this appeal, that the issue is preserved.

If a manslaughter charge is not supported by any view of the evidence, then a judge does not commit error by refusing to give such an instruction in a murder case. *Commonwealth* v. *Campbell,* 352 Mass. 387, 392 (1967). All reasonable inferences are drawn in favor of the defendant in deciding whether a manslaughter instruction was supported by the evidence. *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746 (1975).

Voluntary manslaughter is "a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Vanderpool, supra* at 746, quoting *Commonwealth* v. *Soaris,* 275 Mass. 291, 299 (1931). There was no evidence that the three men were provoked, attacked, or otherwise assaulted by the victim. See *Commonwealth* v. *Halbert,* 410 Mass. 534, 539 (1991) ("The victim's question ['Josh, what do you want to do?']) was neither insulting nor hostile" and was not sufficient evidence of provocation to warrant manslaughter instruction); *Commonwealth* v. *Pierce, ante* 28, 32 (1994) (nonthreatening invitation accompanied by physical gesture were insufficient evidence to warrant manslaughter instruction).

A defendant is guilty of involuntary manslaughter if the homicide he is charged with was (a) the unintentional result of an act committed with such disregard of its probable harm to another as to amount to wanton or reckless conduct, or (b) an unintentional death which results from the commission of a battery. See *Commonwealth* v. *Sheppard*, 404 Mass. 774, 776 (1989), and cases cited. "A killing without malice does not automatically become involuntary manslaughter. The traditional elements of involuntary manslaughter must be shown by evidence that the jury might believe before an instruction on involuntary manslaughter is required." *Commonwealth* v. *Sires*, 413 Mass. 292, 302-303 (1992).

Evidence of wanton and reckless conduct amounting to involuntary manslaughter was not raised by the testimony. The risk of harm associated with stabbing a person in the head with knives and slashing a person's throat with a razor blade is the kind of risk that could only lead to a determination of malice. *Commonwealth* v. *Ferreira*, 417 Mass. 592, 599 (1994).

The defendant's argument that the evidence required an instruction on the theory of a battery not amounting to a felony-manslaughter also is unsupported by the evidence. "The law of this Commonwealth recognizes unlawful-act manslaughter . . . if the unlawful act is a battery not amounting to a felony, when the defendant knew or should have known that the battery he was committing endangered human life." *Commonwealth* v. *Sires*, *supra* at 302 n.10. The testimony does not support a claim that the victim's death was an unintentional death resulting from a battery not amounting to a felony.

The defendant's trial strategy was a claim that he was present and fearful[5] of Halbert and Pierce but that he was

[5] On appeal the defendant asserts that he was so intoxicated that he was incapable of forming the intent or knowledge necessary for murder in the first degree. The record does not support the defendant's claim. According to the defendant's statement to the police, he drank one beer at McLane's apartment. On direct examination, the defendant was asked: "Were you

not a participant or a joint venturer in the homicide by felony-murder or extreme atrocity or cruelty. If the jurors believed that the defendant was merely present and fearful, then they were required to acquit him. If the jurors believed that the defendant was part of a felonious joint venture which was inherently dangerous to human life or that he was ready, willing, and able to assist his coventurers in their criminal assault on the victim, then the jury could convict the defendant of murder in the first degree. There is no basis on the record for an instruction on either voluntary or involuntary manslaughter.

V. *Instruction under the humane practice rule.* The defendant concedes that a humane practice instruction was not requested at trial, but argues on appeal that the voluntariness of his signed statement remained a live issue at trial and that the judge erred in not instructing the jury sua sponte under the humane practice rule. *Commonwealth* v. *Tavares*, 385 Mass. 140, cert. denied, 457 U.S. 1137 (1982). We do not agree.

The defendant asserts that voluntariness became a live issue because he denied on cross-examination that he made several of the statements in the written version of his statement to police. The defendant argues that voluntariness also was raised by evidence of the defendant's intoxication, limited education, emotional state, and the circumstances of the interrogation. The defendant's claim at trial was not that the statements were involuntary, but that he did not make some of the statements testified to by police. The defendant did not

---

under the influence of any drugs or medication when you went to [the victim's] house?" The defendant said, "No, I wasn't." Halbert's statement to the police indicated that the defendant had "some beers." "In a first degree murder trial, a defendant may show that he was so far overcome by intoxicating substances as to be rendered incapable of forming the intent or knowledge necessary to commit premeditated murder, or murder with extreme atrocity or cruelty, and, based on such evidence, a jury would be warranted in returning a verdict of second degree murder, if they were satisfied beyond a reasonable doubt that all other elements of the crime had been proved." *Commonwealth* v. *Cruz*, 413 Mass. 686, 689-690 (1992). The record does not support any claim of debilitating intoxication.

raise voluntariness. There was no substantial likelihood that a miscarriage of justice occurred in not instructing on the humane practice because voluntariness of his statement was not a live issue.[6]

VI. *G. L. c. 278, § 33E*. The defendant also seeks a reduction of the verdict pursuant to G. L. c. 278, § 33E. We conclude that the Commonwealth presented sufficient evidence of the defendant's participation in the underlying robbery and of the extremely brutal manner in which the victim was killed to support his conviction of murder in the first degree. The defendant's argument that he was in special needs classes during his primary education and that he was from a "disadvantaged" background do not justify a reduction to the lesser degree of guilt. We have considered the entire case on the law and the evidence, see G. L. c. 278, § 33E, and conclude that the interests of justice do not require a new trial or entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*

[6]Prior to trial, the defendant filed a motion to suppress his statement. That motion was denied. The defendant does not argue any error with respect to that ruling. Pursuant to G. L. c. 278, § 33E (1992 ed.), we reviewed the ruling and conclude that there was no error. The judge could credit the police officers' testimony that: the defendant was calm during the interrogation, understood the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and voluntarily signed the Miranda waiver form. The judge determined that the defendant's waiver was an intelligent and knowledgeable waiver. The judge concluded that the defendant was "calm, sober, [and] appeared to be well-oriented as to time, place and circumstance." The judge also determined that the voluntariness of the statement was not treated as a live issue at the hearing on the motion and therefore that issue was waived.