COMMONWEALTH *vs.* JOSEPH DONOVAN.

Middlesex. October 3, 1995. - March 29, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Practice, Criminal,* Instructions to jury, Argument by prosecutor, Capital case. *Assault and Battery. Homicide. Felony-Murder Rule. Evidence,* Hearsay, Spontaneous utterance.

At a murder trial the judge's failure to instruct the jury on assault and battery as a lesser included offense of murder in the second degree did not create a substantial risk of a miscarriage of justice where the jury convicted the defendant of first degree murder on a theory of felony-murder. [352]

At a first degree murder trial the defendant was not entitled to an instruction on involuntary manslaughter on a theory of battery-manslaughter where the victim died from a felonious assault, viz., a stab wound to the heart. [352-353]

At a first degree murder trial the defendant was entitled, on the evidence, to an instruction on the wanton and reckless theory of involuntary manslaughter, however there was no substantial risk of a miscarriage of justice in the judge's failure to give such an instruction where the jury clearly believed that the defendant possessed the felonious intent necessary for felony-murder. [353-354]

At a murder trial the judge's instruction on murder in the second degree was sufficient and presented no likelihood of a miscarriage of justice. [354-356]

At a murder trial, there was no error in the judge's admitting in evidence as a spontaneous utterance a statement of the victim. [356]

At a murder trial the prosecutor properly argued inferences from the evidence favorable to his case [356-357], and properly commented on the credibility of the witnesses [357]; the judge's instructions to the jury on the presumption of innocence and the burden of proof avoided prejudice to the defendant, if any, in the prosecutor's closing argument [358].

No reason appeared on the record of a murder trial to warrant this court's exercise of its power under G. L. c. 278, § 33E, to reduce a verdict of murder in the first degree. [358]

INDICTMENTS found and returned in the Superior Court Department on October 9, 1992.

The cases were tried before *Robert A. Barton,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Rosemary Daly Mellor,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. A jury convicted the defendant of murder in the first degree by reason of felony-murder. The defendant was also convicted of armed robbery. On appeal, he contends that the trial judge committed error when he failed to: (1) give a requested instruction on assault and battery; (2) give an instruction on involuntary manslaughter; and (3) supplement the given instruction on murder in the second degree. The defendant also claims: improper admission of prejudicial evidence, prosecutorial error in the closing statement, and error in denying the motion for a required finding of not guilty on one of the armed robbery counts of the indictment. In addition, he urges us to exercise our power under G. L. c. 278, § 33E (1994 ed.), to reduce the conviction of murder to a lesser degree of guilt. We affirm the convictions and decline to exercise our power under G. L. c. 278, § 33E.

There was evidence from which the jury could have found the following facts. On September 18, 1992, Yngve Raustein was killed by being stabbed in the heart. Raustein and his friend, Arne Fredheim, both Norwegian citizens enrolled as students at the Massachusetts Institute of Technology (MIT), were walking along Memorial Drive in Cambridge on that date when they encountered the defendant and two companions, Alfredo Velez and a juvenile.

Velez, who pleaded guilty to manslaughter in return for his testimony against the defendant and the juvenile, testified that he and the juvenile were drinking beer in an East Cambridge park that night when they decided to go to MIT and break into lockers to find money.[1] On their way, they met the defendant and told him of their plan.[2] The three then unsuccessfully attempted to rob a liquor store. Outside the store, the juvenile showed the defendant his switchblade knife.[3] The three then returned to the store to rob it using the knife, but

---

[1] At trial, the defendant attempted to impeach Velez's testimony. First, he pointed out that Velez did not include several damaging facts concerning the defendant in his statements to police until just before trial. Second, two inmates of the jail testified that Velez had told them to tell the defendant he was sorry he had to lie, but he did not want to spend the rest of his life in jail.

[2] The defendant denied that he knew of any plan to commit robbery.

[3] The defendant denied that he knew the juvenile had a knife prior to the stabbing.

left because it was too crowded and they headed down Memorial Drive.

As they were walking, they passed Raustein and Fredheim. According to the defendant's testimony, one of the students bumped into him. When the defendant asked them to apologize, the students said something in Norwegian. The defendant asked them what language they were speaking. The two replied and made another comment, which the defendant did not understand. The defendant became angry and punched Raustein in the face, causing him to fall. While Raustein was down, the juvenile stabbed him in the heart. At about the same time, Velez took Fredheim aside and stole his wallet. Velez then told Fredheim to run away. Fredheim asked Raustein what had happened, and Raustein said, "They took my wallet."

Velez testified that he saw the juvenile standing over Raustein, but that he did not see the stabbing. The defendant testified that, after he punched Raustein, he stood facing away from him, attending to the pain in his hand and watching Velez rob Fredheim. He said he did not see the stabbing.

After the incident, all three ran across a bridge toward Kenmore Square. Velez testified that the defendant opened a wallet he had apparently taken from Raustein, took out thirty dollars, distributed it among them, and threw the wallet into the Charles River. When they reached Kenmore Square, the juvenile asked Velez or the defendant to bring him some napkins from a convenience store, which he used to wipe blood off the knife. The juvenile told the defendant that he had used the knife, and that he had wanted to see "what it was like to kill somebody."

The defendant was indicted on one count of murder in the first degree in connection with the death of Raustein and two counts of armed robbery of both Raustein and Fredheim. At the end of the Commonwealth's case, the defendant requested a required finding of not guilty on murder in the first degree, murder in the second degree, and manslaughter. See Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). The judge allowed the motion, but only for so much of the indictment as charged premeditated murder. The judge denied a motion for required finding of not guilty on the count of armed robbery of Fredheim.

The jury convicted the defendant of murder in the first degree of Raustein and armed robbery of Fredheim.

1. *Assault and battery instruction.* We need not decide whether the judge properly denied the defendant's request for an instruction on assault and battery. As a general rule, the jury should receive an instruction on a particular offense where: (1) the offense is, as a matter of law, a lesser included offense of the crime charged; and (2) "the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Santo,* 375 Mass. 299, 305 (1978).

Assault and battery is not a lesser included offense of felony-murder, and the defendant does not contend otherwise. "Where a crime can be committed in any one of several ways . . . [t]hen the defendant should be convicted if it is proved that he committed the crime in any of those ways." *Commonwealth* v. *Judge,* 420 Mass. 433, 444 (1995), quoting *Commonwealth* v. *Nichypor,* 419 Mass. 209, 212 (1994).

Assault and battery is a lesser included offense of murder in the second degree and the jury should have been so instructed. The judge's failure to do so, however, did not result in a substantial likelihood of a miscarriage of justice because the jury rejected the option of murder in the second degree and found the defendant guilty of murder in the first degree under a theory which, as we explained above, does not include the lesser included offense of assault and battery.

2. *Involuntary manslaughter instruction.* The defendant also contends that the judge erred in failing to give the jury an instruction on involuntary manslaughter. The defendant concedes that his trial counsel predicated his request for a manslaughter instruction on the theory of voluntary manslaughter. Therefore, we review to determine whether an involuntary manslaughter instruction should have been given and, if so, whether the lack of such an instruction caused a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Pierce,* 419 Mass. 28, 32-33 (1994); *Commonwealth* v. *MacKenzie,* 413 Mass. 498, 517 (1992).

Generally, a defendant is not entitled to an instruction on involuntary manslaughter where the felony-murder rule applies.[4] See *Commonwealth* v. *Evans,* 390 Mass. 144, 151 (1983). If the underlying felony is not punishable by life in

---

[4]In light of the foregoing discussion, *supra,* we focus here only on the argument that involuntary manslaughter is a lesser included offense of felony-murder.

prison, then murder in the second degree is the appropriate result. See *Commonwealth* v. *Rego,* 360 Mass. 385, 395 (1971). See also *Commonwealth* v. *Dickerson,* 372 Mass. 783, 801 (1977) (Quirico, J., concurring). An instruction on involuntary manslaughter is appropriate in a felony-murder case, however, if there is evidence that the defendant was merely engaged in wanton and reckless conduct that did not amount to malice, *Commonwealth* v. *Campbell,* 352 Mass. 387, 397-398 (1967), or if the victim died unintentionally as the result of a battery not amounting to a felony. *Commonwealth* v. *Nichypor, supra* at 217, citing *Commonwealth* v. *Sires,* 413 Mass. 292, 302 n.10 (1992).

The defendant argues that, at most, he intended to assault and batter the victim and that he may have acted with reckless disregard that his companions might join in the assault. Since assault and battery is not a prerequisite offense to felony-murder in this case, the defendant argues that he could have been found guilty of involuntary manslaughter under either the battery-manslaughter or the wanton and reckless manslaughter theories.

We agree with the Commonwealth that the defendant was not entitled to an instruction on involuntary manslaughter on the nonfelonious battery theory. The victim died from a stab wound to the heart — a felonious assault — and not a punch to the face. See *Commonwealth* v. *Nichypor, supra* at 217; *Commonwealth* v. *Pierce, supra* at 34-35. Thus, there was no rational basis to find that the victim died as the result of a joint venture to commit a nonfelonious battery on him.

The Commonwealth argues that the defendant was not entitled to an instruction on the wanton and reckless theory of involuntary manslaughter because the defendant's own theory of the case contradicts such a finding. This is not a sound basis for failing to give an instruction that is supported by the evidence. "Even though the defendant's defense was that he played no role in the beating of [the victim], this 'does not relieve the judge from giving an [involuntary] manslaughter charge . . . where the evidence would warrant a conviction of that lesser crime.' " *Commonwealth* v. *Snow,* 34 Mass. App. Ct. 27, 30 (1993), quoting *Commonwealth* v. *Walden,* 380 Mass. 724, 726-727 (1980). See *Commonwealth* v. *Claudio,* 418 Mass. 103, 112 (1994) (defendant entitled to instruction that was supported by evidence even where it was "somewhat at odds with the defendant's trial strategy").

Based on the evidence presented by the defendant at trial, the jury could have found that: the defendant punched Raustein; he did not know the juvenile had a knife; he did not have knowledge of any robbery plan; he did not participate in any robbery; and he acted without malice but with wanton or reckless disregard to the consequences of his actions. If the jury had found these facts, they would have acquitted the defendant of felony-murder, since he did not share with his companions the requisite felonious intent, and should have convicted him of involuntary manslaughter instead. It follows, then, that there should have been an instruction on the lesser included offense of involuntary manslaughter. See *Commonwealth* v. *Campbell, supra* at 398-399. See also *Commonwealth* v. *Martinez*, 393 Mass. 612, 613-614 (1985).[5]

However, a substantial likelihood of a miscarriage of justice does not exist because the jury in this case clearly believed that the defendant possessed the felonious intent necessary for felony-murder. During deliberations, the jury asked the following question: "If a defendant is found guilty of armed robbery, is second degree murder an option as a verdict? Can you define second degree murder for us?" In response, the judge repeated his earlier charge, quoted the statutory language and pointed out that armed robbery is a possible underlying felony of felony-murder. The question in connection with the ultimate verdict of guilty of murder in the first degree indicates that the jury disbelieved the defendant's testimony regarding intent to commit armed robbery. If the jury believed that the defendant shared some lesser intent than that required for armed robbery, they had the option of returning a verdict of murder in the second degree. They did not. Therefore, the defendant's conviction does not present a substantial likelihood of a miscarriage of justice.[6]

3. *Murder in the second degree instruction.* The defendant argues that the judge's instruction on murder in the second

[5]In response to this argument, the Commonwealth merely notes that "[h]ad the jury believed the defendant's story, he would have been entitled to a complete acquittal of any complicity in the victim's death." This assertion flies in the face of the purpose underlying the lesser included offense doctrine.

[6]We disagree with the defendant that his trial counsel's failure to identify the correct theory of manslaughter constituted ineffective assistance of counsel. See *Commonwealth* v. *Martino*, 412 Mass. 267, 288 (1992).

degree was insufficient. The argument was not raised below, so we review it to see whether the instruction as given presented a substantial likelihood of a miscarriage of justice.

In his charge, the judge instructed the jury in relevant part:

> "I will now define murder, a crime our State Legislature has specifically defined in a statute. To the extent that it relates to the allegations in this case, the statute says, and I quote:
>
> > 'Murder committed in the commission of a crime punishable with imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree, is murder in the second degree. The degree of murder shall be found by the jury.'
>
> ". . .
>
> "The prosecution must also prove beyond a reasonable doubt all the elements of a felony punishable by life imprisonment. In this particular case the prosecution has claimed that the defendant participated as a joint venturer in the armed robbery of Yngve Raustein. I instruct you that under Massachusetts law armed robbery is a felony which is punishable by life imprisonment."

In answer to the question by the jury, quoted *supra* at 354, the judge, with the agreement of counsel, gave the following supplementary instruction:

> "If you look to my main instruction to you and you look at the verdict slip on indictment number one, you will find the jury has three alternatives: Number one, not guilty. Number two, guilty of murder in the first degree. Number three, guilty of murder in the second degree. So if your question is: Is second degree murder an alternative on indictment number one, the answer is yes, it's one of the three.
>
> "Now, as far as defining second degree murder is concerned, again I direct you back to the main charge which you each have a copy of, and further I will define murder as it applies to this case in Chapter 265, section

1. And I quote: 'Murder committed in the commission of a crime punishable with imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree, is murder in the second degree. The degree of murder shall be found by the jury.' End of quotation."

The instruction was sufficient to alert the jury that murder in the second degree was a potential verdict. See *Commonwealth* v. *Benjamin*, 399 Mass. 220, 225-226 (1987). This is not a case where the judge refused to give a requested instruction on murder in the second degree. Cf. *Commonwealth* v. *Gaskins*, 419 Mass. 809, 812-813 (1995); *Commonwealth* v. *Brown*, 392 Mass. 632, 643-645 (1984). In these circumstances, the instruction on murder in the second degree did not create a substantial likelihood of a miscarriage of justice.

4. *Admission of hearsay statement.* Over the defendant's objection, the judge permitted Fredheim to testify to Raustein's statement, "They took my wallet." The statement was admissible as a spontaneous utterance. See *Commonwealth* v. *Cohen*, 412 Mass. 375, 391-392 (1992). The defendant argues that the statement should have been excluded because its prejudicial effect outweighed its probative value. See *Commonwealth* v. *Clary*, 388 Mass. 583, 589 (1983). He claims that the statement is ambiguous because it does not specify whether it was the defendant who took the wallet. Under the Commonwealth's theory of joint venture, however, the jury did not need to find that the defendant took the wallet himself, if he was willing and able to help the one who did take it. See *Commonwealth* v. *Bianco*, 388 Mass. 358, 366 (1983). The cases cited by the defendant do not hold otherwise. See *Commonwealth* v. *Lewin*, 407 Mass. 629, 631 (1990); *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. 15, 25 (1990). There was no error.

5. *Closing argument.* The defendant argues that certain statements by the prosecutor were improper and created a substantial likelihood of a miscarriage of justice. The first claim is that the prosecutor misstated the evidence regarding the defendant's willingness to assist Velez in robbing Fredheim. During cross-examination of the defendant the prosecutor brought out that: the defendant saw Velez rob Fredheim; he was paying attention to Velez; he thought Velez "was go-

ing to get into a fight" with Fredheim; and the defendant was willing to come to Velez's aid, since Velez had helped him.

In the closing statement, the prosecutor characterized the testimony, without objection, in the following way:

> "[The defendant] says, 'I turned away, I look over, and jeez, Alfredo Velez is taking the guy's wallet.' That's right. Velez told you that. Remember when I asked him, 'Why'd you look over there, in case you needed help?' He said, 'Yes.' 'Yes.' I said, 'Just 'cause Velez would help you?' He said, 'Yes.' "

The statements were not improper. The prosecutor has the right to argue inferences from the evidence favorable to his case. See *Commonwealth* v. *Kelly*, 417 Mass. 266, 270 (1994). Here, the defendant's own testimony fairly supported the inference that the defendant was willing and able to assist Velez.

The defendant next argues that the Commonwealth in its closing argument improperly impugned the defendant's credibility and his right to be presumed innocent. In the course of his closing, again without objection, the prosecutor contrasted the credibility of Velez with that of the defendant. The prosecutor urged the jury to credit the testimony of Velez because Velez took responsibility for his role in the crime and the defendant did not: "[Velez] said what he did. He took some responsibility in this case. [The defendant] takes zero. He says to you, 'I'm not guilty of everything.' " Later, the prosecutor returned to the theme: "Who participated in the robbery? [The defendant.] Just like Velez did, and he's going to plead guilty. [The defendant] doesn't want reponsibility."

The prosecution may properly attack the credibility of witnesses, including the defendant, *Commonwealth* v. *Moore*, 408 Mass. 117, 132 (1990), and may ask the jury to compare the credibility of two opposing witnesses. See *Commonwealth* v. *Fernette*, 398 Mass. 658, 666 (1986). Taken in the context of the whole argument the prosecutor was contrasting the testimony of the defendant with that of Velez and asking the jury to assess their respective credibility based on one accepting some of the blame and one not. The argument cannot be fairly characterized as detracting from the presumption of innocence or the Commonwealth's burden of proof. See *Commonwealth* v. *Person*, 400 Mass. 136, 139 (1987).

Furthermore, the judge properly instructed on the presumption of innocence and the burden of proof. Even if the prosecutor's arguments crossed the line, the judge's instructions avoided substantial prejudice to the defendant. See *Commonwealth* v. *Daughtry*, 417 Mass. 136, 141 n.2 (1994); *Commonwealth* v. *Phoenix*, 409 Mass. 408, 427 (1991); *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 879 (1984).

6. *Review pursuant to G. L. c. 278, § 33E.* The evidence that the defendant agreed to commit robbery, that he knew the juvenile had a knife, and that he punched the victim and took his wallet amply supports the finding of felony-murder. As we have pointed out above, any errors that did arise in the course of the trial did not create a substantial likelihood of a miscarriage of justice. Therefore, we decline to exercise our extraordinary authority to grant relief under G. L. c. 278, § 33E. See *Commonwealth* v. *Coyne*, 420 Mass. 33, 38 (1995).[7]

*Judgments affirmed.*

---

[7]The defendant also argues that the judge improperly denied his motion for a required finding of not guilty on the indictment charging armed robbery of Arne Fredheim. We disagree. Based on the Commonwealth's evidence, it would have been reasonable for the jury to infer that the defendant was willing and able to assist Velez in the robbery of Fredheim. After the defendant's testimony, the jury had more than sufficient evidence to reach the same conclusion. The judge's ruling was not error. See *Commonwealth* v. *Williams*, 399 Mass. 60, 70 (1987); *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 330-331 (1993).