NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12836

COMMONWEALTH  vs.  TERRENCE TYLER.


Essex.      December 8, 2023. - April 8, 2024.

Present:  Budd, C.J., Gaziano, Kafker, & Georges, JJ.


Homicide.  Felony-Murder Rule.  Practice, Criminal,
    Retroactivity of judicial holding, Instructions to jury,
    Presumptions and burden of proof, Assistance of counsel,
    New trial, Capital case.  Retroactivity of Judicial
    Holding.  Evidence, Presumptions and burden of proof,
    Intent.  Intent.  Robbery.  Assault with Intent to Rob.



    Indictments found and returned in the Superior Court
Department on December 18, 2014.

    The cases were tried before James F. Lang, J.; a motion for
a new trial, filed on March 10, 2021, was heard by him; and a
second motion for a new trial, filed on April 4, 2022, was also
heard by him.


    James A. Reidy for the defendant.
    Kathryn L. Janssen, Assistant District Attorney, for the
Commonwealth.


    GAZIANO, J.  At approximately 1:30 A.M. on August 16, 2014,

Wilner Parisse was shot through the chest and killed in his

apartment in Lynn.  The defendant, Terrence Tyler, was one of

three participants in a plan to break into and rob the victim's home.  As part of the plan, the defendant's friend, Monique Jones, attempted to distract the victim with sexual advances while the defendant and another friend, Rashad Shepherd, entered the apartment to steal the victim's money and marijuana.  However, the plan went awry.  Jones failed to keep the victim preoccupied, leading to a physical altercation between the defendant and the victim.  During the ensuing fight, Shepherd came to the defendant's aid and fired the fatal shot.

Following a five-day jury trial, the defendant was found guilty of felony-murder in the first degree with the predicate felony of attempted unarmed robbery.  He was also found guilty of assault with intent to rob.  The defendant appealed.  Thereafter, the defendant filed two motions for a new trial, which we remanded to the Superior Court.  In his first motion, the defendant argued that the failure of his trial counsel to request an involuntary manslaughter jury instruction constituted ineffective assistance.  In his second motion, the defendant requested that this court's decision in Commonwealth v. Brown, 477 Mass. 805, 807 (2017), cert. denied, 139 S. Ct. 54 (2018), in which we held that "felony-murder is no longer an independent theory of liability for murder," be applied retroactively to the defendant's case.  Both motions were denied.  The defendant's

appeals from the denials of his motions for a new trial have been consolidated with his direct appeal.

In his consolidated appeal, the defendant maintains that this court retroactively should apply the rule in Brown, 477 Mass. at 807, and that his trial counsel was ineffective for failing to request an involuntary manslaughter instruction. Additionally, the defendant argues that the jury instruction on an element of felony-murder was erroneous and permitted the jury to find the defendant guilty of murder for conduct only sufficient for manslaughter. Finally, the defendant asks this court to exercise its authority under G. L. c. 278, § 33E (§ 33E), to reduce the verdict of murder in the first degree to a lesser degree of guilt.

We are not persuaded by the defendant's arguments. First, as we repeatedly have emphasized, the rule in Brown was intended only to apply on a prospective basis. There is no reason to depart from that limitation. Second, trial counsel did not err by failing to request an involuntary manslaughter instruction, as the pre-Brown default rule applies here -- that is, no involuntary manslaughter instruction ordinarily is required in a felony-murder case. Third, the trial judge's instruction did not allow the jury to find the defendant guilty of felony-murder for conduct only sufficient to convict him of manslaughter, as the instruction adequately reflected the higher risk involved

with felony-murder as compared to manslaughter.  Last, we decline to grant relief pursuant to § 33E.

Background.  1.  Facts.  We recite the facts the jury could have found.  See Brown, 477 Mass. at 808; Commonwealth v. Neves, 474 Mass. 355, 356 (2016).

Although the defendant and the victim did not know each other, Jones would prove to be the linchpin that brought them together on the night of the attempted robbery.  While she had been a friend of the defendant for over ten years, Jones had known the victim for "a couple of years" before the attempted robbery.  The victim was a marijuana dealer, and Jones was one of his customers.  Over time, they also became occasional sexual partners.  It was not uncommon for Jones to visit the victim's apartment in Lynn.  The victim lived on the second floor of a three-floor apartment building.  To reach the victim's apartment, Jones would open the building's outside door, ascend one flight of stairs, and open a second door leading directly into the apartment.

In 2014, about a month before the attempted robbery, the defendant learned through Jones that the victim was a drug dealer and that he routinely kept money and marijuana in his bedroom closet.  The defendant, "desperate for money," subsequently began asking Jones how much money and marijuana the victim typically had in his possession.  The defendant

repeatedly broached with Jones the idea of robbing the victim, telling her that the robbery would be "easy" and an "in and out" job. Due to her friendship with the victim, Jones claimed to have brushed off these suggestions until the night of August 15, 2014.

That evening, Jones planned to go to a restaurant in Lynn that she frequented with her friend, Shea McMillan. Jones had been drinking "a lot" by the time she started to drive to the restaurant in her rental car. On a whim, Jones picked up the defendant and Shepherd on her way. After Jones parked outside of the restaurant, McMillan ran inside to use the restroom. Jones, still in the car, shared with the defendant and Shepherd that she was upset by rumors that she had talked to the police about an unrelated matter. The defendant consoled Jones and again broached the idea of robbing the victim. Emotional and intoxicated, Jones finally agreed.

The plan was simple: Jones would drive to the victim's apartment with the defendant and Shepherd. Jones would enter the apartment alone, leaving both the outside door and the door into the victim's second-floor apartment unlocked. Meanwhile, the defendant and Shepherd would wait outside, giving Jones time to distract the victim by engaging in sexual activity with him. After approximately twenty minutes, the defendant and Shepherd would enter the home, steal the victim's marijuana and money

from his bedroom closet while he remained distracted, and run away.

With the plan in place, Jones, Shepherd, and the defendant entered the restaurant. Using Jones's cell phone, both the defendant (posing as Jones) and Jones herself proceeded to send provocative text messages to the victim to coax him into meeting that night. The victim ultimately agreed and invited Jones to his apartment.

Later that evening, Jones, McMillan, Shepherd, and the defendant got back into Jones's car and went to the victim's apartment; Jones purposefully parked the car a few houses away.[1] On arriving, Jones let herself in, as the victim had left both doors into the apartment open for her. She then entered the victim's bedroom, closing the door behind her, and began smoking marijuana with the victim. Soon after Jones's arrival, and sooner than she expected, the victim "wanted to fool around heavily." Because the victim's behavior expedited the timeline for the attempted robbery, Jones entered the bathroom directly next to the victim's bedroom, quickly called the defendant on her cell phone, and told him to speed up the plan. In response,

---

[1] After leaving the restaurant, McMillan passed out in the car and remained unconscious throughout the attempted robbery. Jones kicked her out of the car while fleeing the scene. McMillan did not testify at trial.

the defendant told her that he and Shepherd were on their way inside.

On Jones's return from the bathroom, the victim closed and locked his bedroom door.  Realizing that her associates would be unable to execute the robbery with the bedroom door locked, Jones sent a text message to the defendant instructing him to "wait."  Jones then asked the victim to get her something to drink so that the victim would unlock the door.  When the victim opened his door to go out into the kitchen, which was directly outside his bedroom, he walked right into the defendant.

The two men immediately began fighting, quickly moving from the kitchen into the bedroom.  The victim grabbed a baseball bat near his bedroom door and started swinging at the defendant, prompting the defendant to rush him.  At this point, Jones was on the bed and Shepherd was near the entry door in the kitchen, watching the fight.  The fight returned to the kitchen and continued as the two men fell to the ground, with the victim biting the defendant and both men screaming.  As the defendant screamed for Shepherd to help him, Jones grabbed her clothes in a panic and ran into the bathroom.  Moments later, she heard gunshots.

When Jones exited the bathroom, the defendant was running down the stairs, Shepherd was gone, and the victim was bleeding out on the kitchen floor, but alive and reaching out to her.

After the victim could not get up, Jones "knew he had passed" and ran out of the apartment and to her car. As she started driving away, Jones paused to pick up the defendant, whose finger was bleeding from a bite wound sustained during the fight, and they drove to Boston to spend the night. Jones did not see Shepherd again that night.

After the three participants in the robbery had fled the scene, the victim's roommate wakened in the middle of the night to find the victim lying on the kitchen floor in a pool of blood. Frantic, the roommate ran outside and managed to flag down two police officers. The roommate explained that there was someone bleeding on the floor of his apartment and brought the officers inside. There, the officers saw the victim lying face down where the roommate had left him. He had no pulse. After the officers unsuccessfully attempted to revive the victim, he was pronounced dead at the scene. The victim later was determined to have been killed by a gunshot through the chest.

Investigating officers later found a bag containing marijuana in the victim's bedroom closet, as well as $270 on his bureau. Officers also discovered Jones's cell phone, which she had left at the victim's apartment, and from which police were able to obtain her call log and text messages. Officers also subsequently seized the rental car that Jones had been driving on the night of the murder, and the State police crime

laboratory identified samples taken from the car as the defendant's blood.  As the investigation progressed, police also recovered video recordings from the restaurant and a property neighboring the victim's apartment, both recorded on the night of the murder, which defense counsel conceded at trial contained depictions of the defendant in the time leading up to the murder.

2.  Prior proceedings.  In December 2014, a grand jury indicted the defendant, Shepherd, and Jones each with murder, G. L. c. 265, § 1; armed home invasion, G. L. c. 265, § 18C; and armed assault with intent to rob, G. L. c. 265, § 18 (b).[2]

The defendant's trial commenced in March 2016.  The Commonwealth proceeded on a theory of felony-murder in the first degree with the predicate felonies of armed home invasion, attempted armed robbery, and attempted unarmed robbery.[3]  The

---

[2] Shepherd was tried separately from the defendant and convicted in April 2016 of felony-murder in the first degree, with attempted unarmed robbery as the predicate felony.  He was acquitted of both armed home invasion and armed assault with intent to rob.  We recently affirmed Shepherd's conviction in his consolidated appeal.  See Commonwealth v. Shepherd, 493 Mass. 512, 514 (2024).  In May 2016, Jones entered into a cooperation agreement with the Commonwealth.  She pleaded guilty to attempted armed robbery, G. L. c. 265, § 18 (b), and breaking and entering in the nighttime with intent to commit a felony, G. L. c. 266, § 16; she received concurrent sentences of from five to seven years in State prison.

[3] The Commonwealth also presented the felony of breaking and entering in the nighttime with the intent to commit a felony to

judge instructed the jury that, because attempted unarmed robbery is not an inherently dangerous felony, in order to find the defendant guilty based on that predicate offense, they had to find that the defendant acted in a manner reflecting a conscious disregard for the risk to human life.

Ultimately, the jury found the defendant guilty of felony-murder in the first degree with the predicate felony of attempted unarmed robbery. The jury also found the defendant guilty of unarmed assault with intent to rob, a lesser included offense of armed assault with intent to rob, which the judge placed on file for five years.[4] However, the jury found the defendant not guilty of armed home invasion.

---

the jury as the predicate offense for felony-murder in the second degree.

[4] Our review of the record pursuant to G. L. c. 278, § 33E, reveals that the defendant's conviction of assault with intent to rob is duplicative of his felony-murder conviction and therefore "must be vacated." Commonwealth v. Rivera, 445 Mass. 119, 131-132 (2005) (armed assault with intent to rob was lesser included offense "duplicative of the predicate felony [of attempted armed robbery], and hence of the murder conviction," and therefore "must be vacated as duplicative," given that "the predicate felony merges into the felony-murder conviction as a lesser included offense"). See Commonwealth v. Quiles, 488 Mass. 298, 318 (2021), cert. denied, 142 S. Ct. 1237 (2022) (where "there was no evidence of separate and distinct acts that could have supported separate convictions of" lesser included offense and predicate felony, lesser included offense is deemed duplicative and vacated). "This is merely an application of the general rule that one cannot simultaneously be convicted of a crime and of its lesser included offense." Rivera, supra at 132.

In March 2016, the defendant appealed from his convictions. Thereafter, he filed two successive motions for a new trial in March 2021 and in April 2022, which we remanded to the Superior Court.[5]  In his first motion for a new trial, the defendant argued that he received ineffective assistance because trial counsel failed to request a jury instruction on involuntary manslaughter.  The motion judge, who was the trial judge, declined to hold an evidentiary hearing and, following a nonevidentiary hearing, denied the defendant's first motion in a written decision dated June 10, 2021.  The defendant appealed from this denial in October 2021.  In his second motion for a new trial, the defendant argued for the retroactive application of Brown, 477 Mass. 805.  Following a nonevidentiary hearing, the same judge denied the second motion in a written decision dated September 30, 2022.  The defendant appealed from this second denial shortly thereafter.  We then consolidated the defendant's direct appeal with his appeals from the denials of his two motions for a new trial.

Discussion.  1.  Standard of review.  "Where we consider, as we do here, a defendant's direct appeal from a conviction of murder in the first degree together with an appeal from the

---

[5] After filing his first motion for a new trial, the defendant also filed two "corrected" versions of his first motion in June 2021.

denial of a motion for a new trial, we review the whole case under . . . § 33E." Commonwealth v. Goitia, 480 Mass. 763, 768 (2018). "We therefore review raised or preserved issues according to their constitutional or common-law standard and analyze any unraised, unpreserved, or unargued errors, and other errors we discover after a comprehensive review of the entire record, for a substantial likelihood of a miscarriage of justice." Commonwealth v. Upton, 484 Mass. 155, 160 (2020).

2. Motions for a new trial. When reviewing the denial of a motion for a new trial brought in conjunction with the defendant's direct appeal from his conviction of murder in the first degree under § 33E, "[w]e first inquire if the denial of the motion was based on an error of law or an abuse of discretion. If so, we then must determine whether such error creates a substantial likelihood of a miscarriage of justice. We extend special deference to factual determinations made by a motion judge who also was the trial judge, as here." (Citations omitted.) Commonwealth v. Leng, 463 Mass. 779, 781 (2012). See Commonwealth v. Vaughn, 471 Mass. 398, 403-404 (2015). As described supra, the defendant raised separate claims in his two motions for a new trial: that Brown should be applied retroactively to benefit the defendant and that he received ineffective assistance when his trial counsel failed to request an involuntary manslaughter instruction.

a.  Retroactive application of Brown.  In denying the defendant's second motion for a new trial, the judge was unpersuaded by the defendant's argument for the retroactive application of Brown and pointed to the many instances in which this court declined to revisit Brown's prospective application. On appeal, the defendant argues that Brown should be applied retroactively in a limited fashion -- specifically, in cases such as his where the Commonwealth was unable to prove actual malice for purposes of a felony-murder conviction.  We decline the defendant's request to do so.

In Brown, 477 Mass. at 807, this court "prospectively narrowed" the scope of felony-murder liability by doing away with constructive malice and abolishing felony-murder as an "independent theory of liability for murder."  Importantly, our decision in Brown was strictly "prospective" and had "no effect on felony-murder cases already tried."  Id. at 834 (Gants, C.J., concurring).  See Commonwealth v. Shepherd, 493 Mass. 512, 522-523 (2024).  See also Commonwealth v. Martin, 484 Mass. 634, 645 (2020), cert. denied, 141 S. Ct. 1519 (2021) ("Brown clearly involved a change in the common law of felony-murder and not a mere clarification. . . .  [W]here we revise our substantive common law of murder, we are free to declare that our new substantive law shall be applied prospectively, much like the Legislature may do when it revises substantive criminal

statutes").  We have reiterated this fact time and time again.

See Shepherd, supra at 523 ("we have declined to apply [Brown]

retroactively on at least eight occasions"); Commonwealth v.

Pfeiffer, 492 Mass. 440, 454-455 (2023) ("We have reiterated

[that Brown's holding only applies prospectively] in subsequent

cases"); Commonwealth v. Tate, 486 Mass. 663, 674 (2021)

(because "the defendant was tried before our decision in Brown,

it does not apply to the defendant's trial"); Commonwealth v.

Bin, 480 Mass. 665, 681 (2018) ("declin[ing]" to revisit Brown);

Commonwealth v. Phap Buth, 480 Mass. 113, 120, cert. denied, 139

S. Ct. 607 (2018) ("declin[ing] to depart" from "prospective

only" new rule in Brown).

Therefore, because the defendant was convicted prior to

Brown, we apply the common-law rule of felony-murder as it

existed at the time of the defendant's trial.

b.  Ineffective assistance of counsel.  The motion judge

denied the defendant's first motion for a new trial because the

defendant failed to show, under the test laid out in

Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), that he

wrongfully was deprived of a substantial ground of defense by

his trial counsel's conduct.  On appeal, the defendant maintains

that trial counsel's failure to request an involuntary

manslaughter instruction constituted ineffective assistance.

The defendant contends that the jury could have concluded that

the robbery, as planned, involved distraction rather than the use of force, demonstrating wanton and reckless conduct by the defendant, rather than a conscious disregard for the risk to human life. We conclude that the defendant's trial counsel was not ineffective because the defendant was not entitled to an involuntary manslaughter instruction.

"When evaluating ineffective assistance of counsel claims in connection with the direct appeal of a conviction of murder in the first degree, 'we review for a substantial likelihood of a miscarriage of justice by asking whether there was error and, if so, whether the error was likely to have influenced the jury's conclusion.'" Commonwealth v. Kirkland, 491 Mass. 339, 346 (2023), quoting Commonwealth v. Don, 483 Mass. 697, 704 (2019). See Commonwealth v. Mercado, 452 Mass. 662, 666 (2008) (substantial likelihood standard under § 33E review "is more favorable to a defendant than the constitutional standard for determining the ineffectiveness of counsel").

"As a threshold matter," before determining whether trial counsel was ineffective, we must determine whether the defendant would have been entitled to an involuntary manslaughter instruction had it been requested. Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006). An involuntary manslaughter instruction is required where "any view of the evidence will permit a finding of manslaughter and not murder." Commonwealth v.

Jessup, 471 Mass. 121, 135 (2015). In making this determination, "all reasonable inferences must be resolved in favor of the defendant." Id., quoting Commonwealth v. Vanderpool, 367 Mass. 743, 746 (1975). It is a "well-established" rule that "a defendant is not entitled to an instruction on wanton or reckless involuntary manslaughter" where pre-Brown felony-murder applies.[6] Commonwealth v. Dawson, 490 Mass. 521, 532 (2022). See Neves, 474 Mass. at 369; Jessup, supra; Commonwealth v. Selby, 426 Mass. 168, 172-173 (1997); Commonwealth v. Evans, 390 Mass. 144, 151 (1983). There are two narrow exceptions to this rule.

In one exception, an instruction on involuntary manslaughter is appropriate where the jury could find that the defendant, rather than intending to commit the predicate felony, engaged in conduct that was merely "wanton or reckless."

---

[6] Since Brown, a finding of constructive malice is no longer sufficient for a conviction of felony-murder -- actual malice is required. Shepherd, 493 Mass. at 522. Because manslaughter mitigates a defendant's intent to kill, see Commonwealth v. Campbell, 352 Mass. 387, 397 (1967), it is possible that a defendant facing charges of felony-murder may be entitled to an instruction on involuntary manslaughter post-Brown. See Brown, 477 Mass. at 832-833 (Gants, C.J., concurring) ("Where a defendant participates in an armed robbery but does not have the requisite intent for murder, the defendant will be found guilty of involuntary manslaughter if he or she acted wantonly or recklessly"). See also Model Jury Instructions on Homicide 70-71 (2018) (note).

Commonwealth v. Donovan, 422 Mass. 349, 354 (1996).[7]  In Donovan, after the defendant punched the victim in the face, the defendant's companion fatally stabbed the victim in the heart while the defendant's back was allegedly turned.  Id. at 351. The companion also stole the victim's wallet.  Id.  The defendant denied any knowledge of the robbery plan.  Id. at 354. The defendant was convicted of felony-murder in the first degree and of armed robbery.  Id. at 350.  On review, we determined that the defendant was entitled to an involuntary manslaughter instruction.  See id. at 352-354.  Based on the evidence presented, we reasoned that it was possible that the jury could have found that the defendant "did not have knowledge of any robbery plan; he did not participate in any robbery; and he acted without malice but with wanton or reckless disregard to the consequences of his actions."  Id. at 354.  Therefore, we further reasoned, "[i]f the jury had found these facts, they would have acquitted the defendant of felony-murder, since he did not share with his companions the requisite felonious

_____

    [7] Donovan, 422 Mass. at 353, provides that an instruction on involuntary manslaughter is appropriate in a felony-murder case "if there is evidence that the defendant was merely engaged in wanton and reckless conduct that did not amount to malice." This court ultimately determined that the defendant in Donovan was entitled to an instruction on involuntary manslaughter because he arguably lacked "the requisite felonious intent" -- that is, the constructive malice -- necessary to support a felony-murder conviction.  Id. at 354.

intent, and should have convicted him of involuntary manslaughter instead."  Id. at 353-354.[8]

Similarly, in Commonwealth v. Campbell, 352 Mass. 387, 397-398 (1967), we concluded that an involuntary manslaughter instruction was warranted where the jury could have found that the defendant's conduct was "consistent with a failure to regard the consequences of his action or an indifference to what the consequences of his action might have been, thus rising to wanton or reckless conduct."  The defendant in Campbell was convicted of felony-murder in the first degree based on the predicate offense of assault with intent to commit rape.  See id. at 391, 393.  Although he was accused of strangling the female victim in an attempt to restrain and rape her, the defendant claimed that he had placed his arm around the victim's neck to quiet her down, rather than to harm her, and denied any intention to rape the victim.  See id. at 390, 394, 397-399. Because the defendant disputed his intent to commit any felony, the jury could have found "that the killing was without malice." Id. at 398-399.

---

[8] We articulated a second exception in Donovan, 422 Mass. at 353, where there is evidence that "the victim died unintentionally as the result of a battery not amounting to a felony."  Because the victim in the present case was shot and killed during the commission of a felony, we focus our analysis on the first exception.  Id.

Both Donovan, 422 Mass. at 353, and Campbell, 352 Mass. at 398, demonstrate that, in a felony-murder case, where any view of the evidence casts doubt on the defendant's intent to commit the predicate felony, an involuntary manslaughter instruction must be given. The logic for this exception is straightforward: "Malice is what distinguishes murder from manslaughter" (citation omitted). Commonwealth v. Pagan, 471 Mass. 537, 546, cert. denied, 577 U.S. 1013 (2015). "The distinction means that a verdict of manslaughter is possible only in the absence of malice." Id. In the case of felony-murder, pre-Brown, "the intent to commit the underlying felony" is substituted for "the malice aforethought required for murder" (citation omitted). Commonwealth v. Tejeda, 473 Mass. 269, 272 (2015), S.C., 481 Mass. 794 (2019). Thus, where a defendant's felonious intent is in question, involuntary manslaughter comes into play.

Here, such an exception to the general rule is inapplicable, as there is no view of the evidence that would call the defendant's felonious intent into question. Indeed, the defendant explicitly conceded that he intended to commit the predicate felony of attempted unarmed robbery during trial; as his counsel stated in closing arguments, his "intention was to steal." See Commonwealth v. LePage, 352 Mass. 403, 419 (1967) (intent to commit predicate felony sufficient to support felony-murder charge). See also Tejeda, 473 Mass. at 275-276

(constructive malice applies). Because the defendant's felonious intent is not in dispute, unlike in Donovan and Campbell, the defendant was not entitled to an involuntary manslaughter instruction. Accordingly, his counsel could not have been ineffective for failing to request an instruction to which the defendant was not entitled. See Acevedo, 446 Mass. at 442.

3. Felony-murder jury instruction. The defendant takes issue with the judge's instruction regarding one of the elements of felony-murder: that the underlying felony is inherently dangerous or, in the alternative, the defendant acted with a conscious disregard for the risk to human life. The judge instructed the jury, quoting from the Model Jury Instructions on Homicide 56 (2013),[9] that they could find that "the defendant committed or attempted to commit the felony with a conscious disregard for the risk to human life if [they found] that the defendant intended the felony to occur or the felony did occur in a way known by the defendant to be dangerous to life or likely to cause death" (emphasis added). On appeal, the defendant argues that this instruction, by virtue of the use of the word "or," allowed the jury to find the defendant guilty of

---

[9] "[W]e have urged trial judges to adhere to the Model Jury Instructions on Homicide." Commonwealth v. Bonner, 489 Mass. 268, 285 (2022).

murder for conduct that "although dangerous, was not likely to cause death." According to the defendant, this falls below the standard for conscious disregard because "[a]cts posing a danger to life or even a likelihood of death (rather than a substantial likelihood of death) are more akin to wanton and reckless manslaughter than murder." Therefore, the defendant contends, this instruction wrongly allowed the jury to find the defendant guilty of murder for conduct that only would be sufficient to support a manslaughter conviction.

As no objection was raised to this instruction at trial, we review this unpreserved claim to determine "whether there was error and, if so, whether it created a substantial likelihood of a miscarriage of justice." Brown, 477 Mass. at 814-815, citing Commonwealth v. Wright, 411 Mass. 678, 681 (1992), S.C., 469 Mass. 447 (2014). We conclude that there was no error.

Because the common-law rule of felony-murder is "based on the theory that the intent to commit the felony is equivalent to the malice aforethought required for murder," and because not all felonies are created equal, the rule requires that a defendant, in committing or attempting to commit a predicate felony, exhibit a conscious disregard for the risk posed to human life. Commonwealth v. Matchett, 386 Mass. 492, 506-507 (1982). A predicate felony must be either "inherently dangerous" or, where a felony is not inherently dangerous, the

burden falls on the Commonwealth to prove, beyond a reasonable doubt, that the defendant exhibited "a conscious disregard of the risk to human life." Id. at 507-508. See Commonwealth v. Cook, 419 Mass. 192, 205-206 (1994), S.C., 447 Mass. 1023 (2006) and 451 Mass. 1008 (2008) (inherently dangerous felonies do not require showing of conscious disregard because "the risk is implicit," but felonies not considered inherently dangerous do require showing of conscious disregard). Here, because attempted unarmed robbery is not an inherently dangerous felony, see Commonwealth v. Scott, 428 Mass. 362, 364-365 (1998), the Commonwealth had to prove beyond a reasonable doubt that the defendant acted with conscious disregard for the risk to human life in committing the predicate felony.

The defendant wrongly conflates the felony-murder and involuntary manslaughter standards, as there is a difference in the degree of risk of physical harm. See Commonwealth v. Sneed, 413 Mass. 387, 394 (1992) ("the wanton and reckless theory of involuntary manslaughter . . . expresses a level of risk of physical harm below [the] level[] that must be shown for a conviction of murder in the first degree . . . on the theory of felony-murder"). The risk involved for felony-murder is not the mere risk of harm generally, but the "risk to human life." Matchett, 386 Mass. at 508. In contrast, the risk of harm associated with involuntary manslaughter caused by wanton or

reckless conduct is "a high degree of likelihood that substantial harm will result to another" (citation omitted). Commonwealth v. Carillo, 483 Mass. 269, 270 (2019). Therefore, while involuntary manslaughter requires "conduct involving 'a high degree of likelihood that substantial harm will result to another,'" proving that a defendant acted with conscious disregard for the risk to human life "requires more than a mere threat of substantial physical harm" (citation omitted). Commonwealth v. Lopez, 80 Mass. App. Ct. 390, 394 n.5 (2011). Indeed, the defendant's conduct "must pose a foreseeable risk of actual loss of life" to meet the standard for felony-murder. Id. In short, "[c]onscious disregard demands conduct more dangerous than that required for involuntary manslaughter." Id.

Because the judge properly articulated the degree of risk with respect to the "conscious disregard" standard, the jury could not have convicted the defendant of felony-murder while only finding the defendant to have engaged in wanton and reckless conduct. See Commonwealth v. Sifa Lee, 483 Mass. 531, 547 n.12 (2019) (presumption "that the jury understood and followed the judge's instruction[s]"). Given the lack of any error in the jury instructions, the defendant's argument fails.

4. Review under G. L. c. 278, § 33E. We do not consider the circumstances here to warrant the exercise of our extraordinary authority under § 33E. None of the factors that

tend to support § 33E relief is present here.  See generally Commonwealth v. Yat Fung Ng, 491 Mass. 247, 273 (2023).  For example, the defendant does not claim that he was mentally ill, too young, under duress, or intoxicated on the night of the murder.  See Commonwealth v. Concepcion, 487 Mass. 77, 95, cert. denied, 142 S. Ct. 408 (2021).  Nor can the defendant claim that he was on the "remote outer fringes" of the attempted robbery, as the plan was orchestrated by him and executed at his insistence (citation omitted).  Brown, 477 Mass. at 824.  See Shepherd, 493 Mass. at 538.

Indeed, the defendant's key role in the planning and execution of the attempted robbery weighs against granting § 33E relief in this instance.  See Tate, 486 Mass. at 677 (declining to exercise § 33E discretion where defendant's companion shot and killed victim during robbery in which defendant was "active participant"); Commonwealth v. Tillis, 486 Mass. 497, 509 (2020) (declining to exercise § 33E discretion where "defendant's active participation in the joint venture included identifying a drug dealer to target, coordinating with an accomplice conducting reconnaissance, planning the robbery, and entering the apartment building").  Even though the defendant in Tillis, supra, was not the one who pulled the trigger, we reasoned that the jury would have nonetheless "been warranted in finding that the defendant played a central role in the crime that led to the

victim's death."  Similarly here, the defendant identified the victim, suggested on multiple occasions to rob him, coordinated with Jones and Shepherd to plan the robbery, posed as Jones to lure the victim into unlocking his apartment, and ultimately entered the apartment building to carry out the plan.  See id. As in Tillis, supra, the fact that the defendant did not pull the trigger himself does not negate his "active participation" and "central role" in the predicate felony.  Therefore, the interests of justice do not require a new trial or the entry of a verdict of a lesser degree of guilt.

Conclusion.  For the foregoing reasons, the conviction of murder in the first degree is affirmed, and the orders denying the defendant's first and second motions for a new trial are also affirmed.  The conviction of assault with intent to rob is vacated and set aside.[10]

So ordered.

---

[10] See note 4, supra.